Jalil Essa **BAJALIEH**, Appellant,

v.

Charles J. **BEECHIE**, District Director, Immigration and Naturalization Service, Appellee.

No. 17550.

United States Court of Appeals
Ninth Circuit.

Oct. 29, 1962.

Jackson & Hertogs, and Joseph S. Hertogs, San Francisco, Cal., for appellant.

Cecil F. Poole, U. S. Atty., and Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before HAMLIN and DUNIWAY, Circuit Judges, and JAMESON, District Judge.

JAMESON, District Judge.

This is an appeal from a summary judgment denying appellant's petition for review of an order of the Regional Commissioner, Southwest Region, of the Immigration and Naturalization Service, denying appellant relief under Section 6 of the Refugee Relief Act of 1953.[1]

Appellant was born in Ramallah, British Palestine, an area now controlled by Jordan. He claims to be stateless.

Appellant entered the United States on February 18, 1948, under a nonimmigrant visa and a British-Palestinian passport, the period of admission not to extend beyond August 18, 1948. An extension of stay was granted to February 13, 1949. On January 24, 1949, appellant filed an "application by displaced person residing in the United States to adjust immigration status". Following hearing, this application was denied on March 26, 1953. On May 18, 1953, a warrant for appellant's arrest was issued, charging deportability for failure to comply with the conditions of his status as a nonimmigrant visitor for business. A hearing was held on June 14, 1953, and on August 6, 1953, appellant was found to be illegally in the United States. He was granted until August 31, 1954, to depart voluntarily.

On August 7, 1953, the Refugee Relief Act of 1953 was enacted. On August 6, 1954, appellant filed an "Application to Adjust Immigration Status" under section 6 of the Act. In his application he states that "Ramallah, the place of my birth, is now part of Trans-Jordan and I cannot return to the place of my birth, nationality, and residence as a result

thereof." The application was denied, and this denial was affirmed by the Acting Regional Commissioner on June 29, 1955, upon the ground that appellant had not established his inability to return to the country of his birth and last residence (Trans-Jordan), because of fear of persecution on account of his race, religion, or political opinion.

On December 9, 1955, the privilege of pre-examination was granted appellant to permit his entry into Canada to obtain an immigrant visa with which he could re-enter the United States for permanent residence. The United States Consulate General at Vancouver, British Columbia, concluded that appellant was chargeable to the Palestine quota, because the United States had not recognized any cession of territory between Jordan and Palestine, and further, that persons born in Ramallah are chargeable for immigrant visa purposes to the quota for Palestine.

It appears from an "Order of the Special Inquiry Officer", dated September 6, 1956, that appellant applied for a visa as the beneficiary of a fourth-preference visa petition filed by his brother, a naturalized citizen of the United States, and that the fourth-preference quota for Jordan was then open but the quota for Palestine was closed, with the result that appellant was held ineligible for a visa.

On July 2, 1959, appellant filed a motion to reopen and reconsider his application for adjustment of status under Section 6 of the Refugee Relief Act of 1953. This motion was denied by the Regional Commissioner on July 14, 1959.

On June 16, 1960, appellant filed an application for status as a permanent resi-

---

1. Section 6 of this Act, 50 U.S.C.A.Appendix, § 1971d reads in pertinent part: "Any alien who establishes that prior to July 1, 1953, he lawfully entered the United States as a bona fide nonimmigrant and that he is unable to return to the country of his birth, or nationality, or last residence because of persecution or fear of persecution on account of race, religion, or political opinion * * *

may, not later than June 30, 1955, apply to the Attorney General of the United States for an adjustment of his immigration status. * * * "
(The section then prescribes the procedure to be followed by the Attorney General and Congress, in a proper case, to provide for the alien's admission for permanent residence.)

dent under Section 245 of the Immigration and Nationality Act, 8 U.S.C.A. § 1255, and this application was denied on July 6, 1960. Upon appeal this decision was affirmed by the Regional Commissioner on July 29, 1960.

A further motion to reopen and reconsider appellant's application for adjustment of status under Section 6 of the Refugee Relief Act of 1953 was denied by the Regional Commissioner on September 27, 1960. The petition for review was filed in the district court on October 5, 1960.

The district court found that the "decision of the administrative officer is supported by substantial evidence based upon the record considered as a whole, and that the petition for review should, therefore, be denied." We agree.

 There is substantial evidence to support the finding of the Regional Commissioner that appellant failed to establish his inability to return to the area in which Ramallah is situated "because of persecution or fear of persecution on account of race, religion, or political opinion". Appellant does not contend otherwise. Rather he contends that he was "unable to return" to a "country" (Trans-Jordan) in which he never resided; that the "country" of appellant's birth and last residence was British Palestine and not Trans-Jordan, and British Palestine as a country no longer exists.[2] In other words, appellant argues that the word "country" refers to a political entity, and since the country of his birth, nationality, and residence in that sense no longer exists, he is unable to "return" to that "country".

Appellant relies upon the decision of this court in Cheng Lee King v. Carnahan, 1958, 9 Cir., 253 F.2d 893. Cheng Lee King was a national of Communist China, but last resided at Singapore. He could not return to the country of his birth or nationality because of fear of persecution. He produced proof that he could not return to Singapore for residence. The court held that the words "birth, or nationality, or last residence" should be interpreted in the conjunctive and not in the disjunctive, and should be read in the light of "able to go". Since King feared persecution in the country of his birth and nationality and was unable to go back to Singapore, his last residence, the court held he was entitled to the benefits of the Act.[3]

The Cheng Lee King case is distinguishable from the instant case. Appellant does not claim that he is unable to "go back" to Ramallah, the "place" of his birth and last residence, and from which his nationality is derived. He does not claim persecution or fear of persecution. He seeks relief on the basis of his claim that he is stateless.

The word "country" is not defined in the Refugee Relief Act of 1953. The Supreme Court has held that the words

2. At the time of appellant's birth Ramallah was a part of British Palestine. Later it became a part of Israel. Following hostilities between Jordan and Israel, Ramallah became a part of Jordan. Palestine no longer exists as a political entity. The United States has not recognized Ramallah as part of Jordan. For quota purposes, however, the territory where appellant was born is still designated Palestine.

3. The court said in part: "The Congress thought it not unfair that a man like King should have to go back to his place of last residence, even though he couldn't go back to the country of his birth and his nationality. But King can't go back to reside in Singapore. So doesn't that put him at least along side of another King born in Communist China, a national and last resident thereof? * * *

"It is well to keep in mind the objectives of the bill. Mainly it was enacted to provide for the admission of refugees (recent escapees) who had fled from Communist territory and were in camps or in desperate condition in the countries to which they escaped. * * * Incidentally, it was thought advisable to clear up the basis of the presence here of those in a twilight zone, here but essentially stranded as to nationality because of personal anti-Communist problems. * * * Thus, Section 6 is really the appendage to the act." (253 F.2d at 895)

"foreign country" may be taken to mean either foreign territory or a foreign government; and that the "sense in which it is used in a statute must be determined by reference to the purpose of the particular legislation." [4]

■ The word "country" is also used without definition in § 237(a) (8 U.S. C.A. § 1227(a)) and § 243(a) (8 U.S. C.A. § 1253(a)) of the Immigration and Nationality Act of 1952. The courts have construed the word "country" as used in these sections to include the geographical area or territory from which the alien came.[5] Under these sections appellant would be properly deportable to the "place" of Ramallah. We see no reason why the word "country" should not be given the same construction here. Even though the purposes of the two statutes are not the same, it appears that the broad construction of the word "country" equally serves the purposes of both statutes.[6]

It is our conclusion that the word "country" as used in Section 6 of the Refugee Relief Act of 1953 should not be restricted to the political entity of which the alien may have been a subject at the time of his entrance into the United States, but rather should be construed to include the geographical area or territory from which the alien came. In that sense there is no evidence that appellant may not go back or return for residence to the country or place of his birth and last residence. Having failed to establish that he is unable to return "because of persecution or fear of persecution on account of race, religion, or political opinion," appellant accordingly is not entitled to an adjustment of his immigration status under Section 6 of the Refugee Relief Act of 1953.

Judgment affirmed.

4. Burnet v. Chicago Portrait Co., 1932, 285 U.S. 1, 52 S.Ct. 275, 277, 76 L.Ed. 587.

5. See United States ex rel. Tom We Shung v. Murff, S.D.N.Y.1959, 176 F.Supp. 253, aff'd 2 Cir., 1960, 274 F.2d 667; Rogers v. Cheng Fu Sheng, 1960, 108 U.S.App.

D.C. 115, 280 F.2d 663, cert. denied 364 U.S. 891, 81 S.Ct. 222, 5 L.Ed.2d 187.

6. For the purpose of the Refugee Relief Act of 1953, see Note 3, supra, and 2 U.S.Code, Cong. and Adm.News, 1953, 83rd Cong., 1st Sess., p. 2103 et seq.