**Nebi ADEMI, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

Nos. 92–3234, 93–3230.

United States Court of Appeals, Seventh Circuit.

Argued March 28, 1994.

Decided Aug. 3, 1994.

---

518

Michael A. Grochowiak (argued), Sklodow-ski, Franklin, Puchalski & Reimer, Melvyn E. Stein, Chicago, IL, for petitioner.

James G. Hoofnagle, Jr., Michael J. Shepard, Asst. U.S. Attys., Chicago, IL, Janet Reno, U.S. Atty. Gen., Frank W. Hunger, Washington, DC, Samuel Der–Yeghiayan, I.N.S., Chicago, IL, William J. Howard (argued), David J. Kline, Dept. of Justice, Office of Immigration Litigation, Washington, DC, for respondent in No. 92–3234.

James G. Hoofnagle, Jr., Asst. U.S. Atty., Chicago, IL, Richard L. Thornburg, U.S. Atty. Gen., Washington, DC, A.D. Moyer, Samuel Der–Yeghiayan, Roger Piper, I.N.S., James B. Burns, Office of the U.S. Atty., Chicago, IL, William J. Howard (argued), David J. Kline, Dept. of Justice, Office of Immigration Litigation, Washington, DC, for respondent in No. 93–3230.

Before CUDAHY and RIPPLE, Circuit Judges, and PLUNKETT, District Judge.*

CUDAHY, Circuit Judge.

Ademi petitions for review of decisions of the Board of Immigration Appeals (BIA) denying the reopening of his asylum request and ordering his deportation. We affirm.

## I.

Ademi is an Albanian Muslim from Macedonia, an independent republic that was part of the former Yugoslavia. He entered West Germany in 1972, where he worked and was granted refugee status, and then returned to Yugoslavia four years later in order to marry and raise a family. In 1984, fearing imprisonment because of his pro-Albanian activities, he left Macedonia where his wife and four children continue to reside, and entered Austria. Ademi returned legally to Yugoslavia on one occasion and returned secretly three times. He travelled next to Bulgaria, Turkey, Iran, Greece and West Germany. While in West Germany, he applied for a refugee visa to the United States, but his application was denied.[1]

Ademi entered the United States near El Paso on May 12, 1986 without the required immigration inspection and was apprehended by the Immigration and Naturalization Service (INS), which commenced deportation proceedings. Ademi conceded his deportability but sought asylum or, in the alternative, voluntary departure. Three days later, the immigration judge (IJ) ordered him to file an asylum application. Ademi, however,

---

* The Honorable Paul E. Plunkett of the United States District Court for the Northern District of Illinois is sitting by designation.

1. One reason the immigration judge denied Ademi's asylum application here was that he could have settled in either West Germany, which gave him refugee status, or in Turkey, a Muslim country, which the immigration judge found opens its doors to Albanians generally.

failed to do so, and the judge ordered him deported.

On August 19, 1986, Ademi moved to reopen his deportation proceedings, and the motion was granted.[2]  On June 8, 1987, however, the IJ denied Ademi's asylum request but allowed him six months to depart voluntarily.  Ademi then appealed the IJ's decision to the BIA.  He claimed asylum based upon police harassment with his taxi and restaurant businesses.  Ademi also testified regarding his membership in several Albanian nationalist organizations, on account of which he claimed to have been arrested and beaten.  Finally, Ademi moved to introduce background material to bolster his asylum request.

On August 19, 1992 the BIA affirmed the IJ's decision and dismissed Ademi's appeal.  The BIA held that Ademi failed to establish a well-founded fear of persecution, and thus did not satisfy the statutory requirements to gain refugee status.  First, the BIA found that the police may have interrogated Ademi to discover information about the groups he supported rather than to single him out personally for his political beliefs.[3]  *See INS v. Elias–Zacarias,* —— U.S. ——, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).  Second, the BIA noted Ademi's lack of corroborating evidence and that his testimony and that of his witnesses was vague and conclusory.  As a result, it concluded "that the respondent's claims may be exaggerated or unfounded."  Moreover, the BIA determined that Ademi had not shown that he had suffered persecution in the past so severe that it warranted a discretionary grant of asylum.  *See Skalak v. INS,* 944 F.2d 364, 365 (7th Cir.1991).  In affirming the IJ, the BIA also denied Ademi's motion to introduce background documentation, holding that the materials were neither new nor material.  The BIA found that Ademi had been given a fair opportunity to introduce background evidence during his hearing before the immigration judge.  Nor did he adequately raise by motion the argu-

ment that changed conditions in the former Yugoslavia required a different result.  The BIA also affirmed the IJ's grant of voluntary departure, allowing Ademi thirty additional days to leave voluntarily plus any extension that might be granted by the INS district director.  Just before the end of the voluntary departure period, Ademi filed with this court a petition for review of the August 1992 BIA decision.  Several days later, he filed with the district director a request for an extension of the voluntary departure period.  The district director denied the extension request.

On January 21, 1993, Ademi filed a motion to reopen with the BIA, and this court granted the parties' joint motion to hold the appeal in abeyance.  But the BIA on July 15, 1993 denied Ademi's motion to reopen.  The BIA rejected Ademi's claim that conditions for ethnic Albanians in Macedonia were worse in 1993 than they had been in 1986, when Ademi first applied for asylum.  "If anything," the BIA stated, "the present conditions in Macedonia are better for ethnic Albanian Muslims."  Certified Administrative Record (CAR) 4.  The BIA also redesignated Macedonia as the country of deportation in order to eliminate any ambiguity regarding the place of deportation.  The issue here is unique since between June 8, 1987 (when the IJ ordered Ademi deported to Yugoslavia) and July 15, 1993 (when the BIA ordered redesignation) the former Yugoslavia ceased to exist.

Ademi then filed a petition for review of the July 15, 1993 BIA decision.  The court then consolidated the two petitions which sought review of the BIA decisions (that of August 19, 1992 and that of July 15, 1993).  Ademi argues here that (1) the BIA erred by neglecting to take administrative notice of conditions hostile to Muslims in the former Yugoslavia;  (2) the BIA should not have redesignated Macedonia as the country of Ademi's deportation;  and (3) the BIA should

---

**2.**  Ademi argued that even though he was represented by counsel at his earlier hearing, he did not know about the deadline for the asylum application.

**3.**  *See Zulbeari v. INS,* 963 F.2d 999 (7th Cir. 1992) (no persecution where police detentions focused on the activities of petitioner's friends, and interrogations stopped after they were arrested).

**520**

have granted an extension of his voluntary departure period.

## II.

### A. *Official Notice*

Ademi argues that the BIA is required to take administrative notice whenever political circumstances in the home country change during the course of an asylum seeker's immigration proceeding. He argues that, in this case, the BIA failed to take notice of circumstances hostile to Muslims in the former Yugoslavia, thereby depriving him of his right to due process. He bases these arguments on *Kaczmarczyk v. INS*, 933 F.2d 588 (7th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 583, 116 L.Ed.2d 608 (1991), in which the BIA considered the conditions prevailing in post-Communist Poland in denying the petitioner's asylum request. Ademi's is sort of a "sauce for the goose is sauce for the gander" approach. If political circumstances change, they should be recognized—whether the change favors the INS view or that of the applicant.

■ But Ademi's position is incorrect for two reasons. First, we held in *Kaczmarczyk* that the BIA may take administrative notice of changed conditions but is not required to do so. 933 F.2d at 594 (the BIA *"may* take official notice of uncontroverted facts concerning political conditions in asylum seekers' home countries.") (emphasis added). Second, in our view, the BIA did not disregard the changed facts and circumstances in the former Yugoslavia. It noted that the state of affairs in the former Yugoslav federation was "in flux" and "extremely uncer-

tain." [4] CAR 98 n. 1, citing *Zulbeari v. INS*, 963 F.2d at 999.[5]

■ In any event, this court need not consider whether official notice is required because Ademi never raised this issue with the BIA. An alien must exhaust the administrative remedies available to him as of right before an order of deportation will be reviewed by the court. Immigration and Nationality Act (INA) § 106(c), 8 U.S.C. § 1105a(c); *see Zulbeari*, 963 F.2d at 1001 n. 2. Five years elapsed between the immigration judge's decision in 1987 and the BIA's decision in 1992. Ademi had a fair opportunity during that time to introduce the issue of administrative notice. Because he waived this issue before the BIA, Ademi is precluded from doing so now.

### B. *Redesignation of Country of Deportation*

■ Ademi contends that the BIA erred in redesignating Macedonia as the country of deportation because, he claims, only the IJ can exercise such authority. Ademi misreads the applicable statutes and regulations. According to the regulations, the alien is given the first opportunity to designate the country of deportation; the IJ will specify the place of deportation only if the country designated by the alien declines to accept him. 8 C.F.R. § 242.17(c)(1) (1993). Neither the statute nor the regulations specifies what happens if the IJ's designation fails. However the Immigration and Nationality Act authorizes the Attorney General to specify the country to which the alien will be sent. 8 U.S.C. § 1253(a); *Osmani v. INS*, 14 F.3d at 15.[6] Further, the regulations indicate that

4. *Cf. Osmani v. INS*, 14 F.3d 13 (7th Cir.1994) (BIA should take into consideration the political changes affecting asylum seekers' home countries).

5. Ademi's second brief also introduced documentation regarding the campaign of ethnic cleansing in the former Yugoslavia. The documentation described the massacre of Muslim civilians by Croats in Central Bosnia. Like the evidence adduced by the petitioner in *Osmani*, 14 F.3d at 15, however, the documentation concerns the persecution of Muslims in Bosnia, and is silent about their mistreatment in Macedonia. The evidence, while harrowing, is not directly relevant to Ademi's argument. *See also Milosevic v. INS*,

18 F.3d 366, 374 (7th Cir.1994) (petitioner's home state of Sarkaman located far from Bosnia–Hercegovina, and doctrine of changed conditions inapplicable).

We are aware that a number of analysts suggest that Macedonia may be the next target of Serbian aggression; this is only speculation, of course, in relation to the decision of the case before us. Steve Vogel, *U.S. Peacekeeping Troops in Macedonia Beefing Up Presence*, Wash. Post, May 17, 1994, at A14.

6. Deportation is directed to a country where the alien is a subject, national, or citizen if it is willing to accept him. 8 U.S.C. § 1253(a). If

the Attorney General has generally delegated to the BIA such discretion and authority as is appropriate and necessary for the disposition of the case. 8 C.F.R. § 3.1(d) (1993). The power to redesignate is circumscribed by the same statutory factors that guide the Attorney General's other determinations. 8 U.S.C. § 1253(a); *see also Osmani,* 14 F.3d at 15 (failure to redesignate the result of protracted proceedings; BIA should consider redesignating); *Akrap v. INS,* 8 F.3d 426, 431 (7th Cir.1993) (petitioner requested BIA to change country of deportation from Yugoslavia to Croatia, and BIA redesignated).

In essence, Ademi asks this court to derive a requirement from the statute and regulations in a situation where, in fact, these authorities are silent. Yet he provides no persuasive reason for doing so. The IJ, pursuant to 8 C.F.R. § 242.17(c), designated Yugoslavia in accordance with Ademi's stipulation. The BIA stepped in only when the country designated ceased to exist in its earlier form, thereby making it impossible to seek its acceptance of Ademi. Ademi has had a hearing and has been afforded multiple opportunities before both the BIA and the IJ to refute their conclusions. Given these facts, and the somewhat limited nature of the redesignation decision here, we do not find

that the BIA acted improperly in redesignating Macedonia as Ademi's country of deportation.[7]

### C. *Request for Extension of Departure Period*

 Ademi's final claim is that the BIA should not have declined to extend voluntary departure. We concluded in *Zulbeari,* however, that this court "lack(s) authority to review the INS's discretionary grant of voluntary departure." *Zulbeari,* 963 F.2d at 1001 (quoting from *Kaczmarczyk,* 933 F.2d at 598). By statute only the Attorney General and her designee have the authority to grant voluntary departure. *See Kaczmarczyk,* 933 F.2d at 597; 8 C.F.R. § 244.2. While this court has the authority to review the BIA's denial of asylum petitions, it has no authority to reinstate voluntary departure.[8]

Affirmed.

---

acceptance is not forthcoming, the statute provides an additional set of seven guidelines for the Attorney General to make a determination of the appropriate country. *Id.*

7. Ademi also argues that because the United States does not recognize Macedonia as a country, the designation is void. However, the term "country" is used without definition in the INA, and courts have construed the word to refer to the geographical area from which the alien came rather than the political entity to which the alien was subject when he entered the United States. *Bajalieh v. Beechie,* 309 F.2d 386, 389 (9th Cir. 1962) (interpreting identical language regarding country of deportation in previous version of INA); *see also Wang v. Pilliod,* 285 F.2d 517, 519 (7th Cir.1960) (Formosa held to be a country to which alien may be deported even though the political status of Formosa had not been formalized). Accordingly, we find that Ademi was deportable to the "place" of Macedonia. *See also Osmani,* 14 F.3d at 15 (petitioner should be deported to Macedonia; "[t]he fact that the United States has not yet formally recognized Macedonia is no obstacle to such a modification."). In any event, since Ademi has filed his petition for review, the United States has recognized Ma-

cedonia. *U.S. Recognizes Macedonia Over Greek Objections,* Wash. Post, Feb. 10, 1994, at A23.

8. In *Kaczmarczyk,* 933 F.2d at 598, however, we emphasized that we might expand our review of voluntary departure denials if the BIA began to exercise its discretion so as to discourage applicants from seeking judicial review of BIA decisions. To discourage the right to appeal is to place an unconstitutional burden on the alien's right to due process. This burden is also exacerbated by the very nature of the voluntary departure procedure. Because the BIA usually grants the alien only thirty days to depart voluntarily and because a petition for review could not be decided within that period, the alien's exercise of his right to appeal is chilled. Other circuits have adopted a different approach to alleviate the due process problem. In *Contreras–Aragon v. INS,* the 9th Circuit held that the voluntary departure period did not expire until after the court's affirmance of the BIA's deportation order. 852 F.2d 1088, 1097 (9th Cir.1988) (en banc). The First Circuit has also held that it may reinstate the voluntary departure period previously granted by the BIA. *Alvarez–Flores v. INS,* 909 F.2d 1, 8 (1st Cir.1990); *see also Umanzor–Alvarado v. INS,* 896 F.2d 14, 16 (1st Cir.1990) (voluntary

departure period begins to run on the date the court's mandate becomes effective); *Novoa–Umania v. INS*, 896 F.2d 1, 5 (1st Cir.1990) (same). However, in our case, the BIA did not appear to abuse its discretion so as to discourage Ademi from appealing its decision.

Although the rule of *Zulbeari* appears to control currently, its reconsideration may be predictable.