85 F.3d 631
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Luben POPOV, Margarita Popova, and Kristina Popova, Board Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-2252.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 24, 1996.
Decided April 25, 1996.
Rehearing and Suggestion for Rehearing En Banc Denied July 22, 1996.
 
 Petition for Review of an Order of the of Immigration Appeals, Nos. Aqy-ypa-jnw, Aio-jhg-axy and Ata-unm-cnd.
 BIA
 REVIEW DENIED.
 Before COFFEY, EASTERBROOK and KANNE, Circuit Judges.
 
 ORDER
 
 1
 The petitioners seek review of a decision of the Board of Immigration Appeals (BIA) that denied their application for either asylum or withholding of deportation under sections 208(a) and 243(h), respectively, of the Immigration and Nationality Act. The petitioners argue that the BIA violated due process by adopting the IJ's decision, that the BIA's factual findings were not supported by substantial evidence, and that the BIA erred by not taking administrative notice of recent changes in Bulgaria. We deny the petition.
 
 
 2
 * The petitioners are natives and citizens of Bulgaria who entered the United States as nonimmigrant visitors for pleasure and overstayed their authorizations to remain. At an initial deportation hearing the petitioners conceded their deportability, but requested asylum or withholding of deportation. After a hearing on January 3, 1994, the immigration judge (IJ) denied both, concluding that the petitioners had not established a well-founded fear of persecution in post-Communist Bulgaria. The BIA affirmed in a two-paragraph per curiam order, adopting the IJ's reasoning and conclusions.[1]
 
 
 3
 Margarita and Kristina Popova are Luben Popov's daughters. His wife, Gratka Popova, testified at the hearing and has a separate asylum petition pending. At the hearing, Luben Popov ("Popov") testified that his grandfather, father, uncle, and great-uncle had suffered mistreatment by Bulgarian authorities, with the most recent incident in 1950s. He stated that in June 1989 he was a deputy director at a large Bulgarian electronics manufacturing plant when he was first approached by two members of the Bulgarian secret police. Over the next few months, the agents repeatedly attempted to recruit him as a secret agent. Popov refused. He testified that upon their final attempt in October 1989 one of the agents threatened him, "do you know that nobody ever tried to refuse us" and "do you know what is going to happen to you?" (Admin. Record at 62.) Shortly thereafter, the Communist dictator of Bulgaria was overthrown.
 
 
 4
 After the October 1989 meeting, Popov took business trips to Cuba, Yugoslavia, and Greece. In March 1990 Popov's company underwent reorganization; his position was eliminated and he was offered a new but, he argues, inferior position. He decided to leave the company and was given three months' severance pay. Popov left Bulgaria for the United States in August 1990. His wife testified that the agents then began to visit her, telling her that her husband was a traitor and that she should divorce him. Popov's daughters were not threatened but were fearful because of the treatment given their parents.
 
 
 5
 The IJ found that Popov's subjective fears of persecution, and his daughters' derivative fears, were genuine and sincere, but concluded that these fears were not objectively reasonable. Moreover, the IJ found that the petitioners were not eligible for asylum because they were not "refugees" within the meaning of 8 U.S.C. § 1101(a)(42)(A). The IJ relied in part on the advisory opinion of the Department of State Bureau of Human Rights, which stated that Bulgaria's progress towards democracy since 1989 had removed any former presumption that mistreatment during the Communist years would lead to future mistreatment. With regard to the personal situations of Luben Popov and Margarita Popova, the State Department opined that they were unlikely to suffer retribution upon returning to Bulgaria.
 
 
 6
 The IJ first found that Popov had not presented sufficient evidence of past persecution to warrant asylum. Specifically, the IJ was persuaded by the evidence that Popov had been very successful in Bulgaria despite his lack of Communist Party membership, that he had never been arrested or charged with an offense, and that he was allowed to travel outside the country freely. Moreover, the IJ found that Popov had failed to demonstrate a nexus between his refusal to join the secret police and his subsequent demotion. The IJ also determined that Popov's fear of future persecution was objectively unreasonable: no retribution had taken place in the months preceding his departure for the United States, he had been permitted to travel abroad, and he never collaborated with the secret police. For the same reasons, the IJ found that the petitioners had not shown the clear probability of persecution required to obtain withholding of deportation.
 
 II
 
 7
 The petitioners first argue that the BIA abused its discretion by adopting the IJ's decision by the use of "boilerplate" language without any further explanation. We recently considered and rejected a similar argument noting that "... an appellate tribunal is entitled to adopt the opinion of its predecessor; the form of words it chooses to do so is irrelevant. Following summary affirmance, we take the immigration judge's explanation as the Board's." Guentchev v. INS, 77 F.3d 1036, 1038 (7th Cir.1996).
 
 
 8
 Beyond their general assertion that they should have prevailed, the petitioners provide no evidence that the BIA actually abdicated its obligation to review the IJ's findings in light of the record. Most importantly, the IJ's decision rested on a solid foundation of evidence that left little, if any, room for a reasonable factfinder to conclude that the petitioners' fear of persecution was objectively reasonable. Finally, the petitioners have not raised any contentions on appeal that are not adequately dispelled by the reasoning of the IJ's decision.
 
 
 9
 Under section 208(a) of the Immigration and Naturalization Act, 8 U.S.C. § 1158(a), the Attorney General may grant asylum in his discretion to any alien who qualifies as a "refugee," defined by statute as any person who is unable or unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). The standard for withholding of deportation under section 243(h) of the Act, 8 U.S.C. § 1253(h), is more demanding: the alien must show that if deported to a given country his or her "life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." The alien must "establish by objective evidence that it is more likely than not that he or she will be subjected to persecution upon deportation." INS v. Cardoza-Fonseca, 480 U.S. 421, 430 (1987).
 
 
 10
 We review the BIA's factual determinations, such as whether the petitioners are refugees eligible for asylum, under the deferential substantial evidence test. Mitev v. INS, 67 F.3d 1325, 1330 (7th Cir.1995). If an asylum applicant "seeks to obtain judicial reversal of the BIA's determination, he must show that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 502 U.S. 478, 484-85 (1992).
 
 
 11
 A review of the record demonstrates that there was substantial evidence that the petitioners were ineligible for asylum, given the speculative nature of their fears. Logically, the IJ also found that they had failed to meet the heavier burden required to obtain withholding of deportation. In Mitev, this court considered a very similar situation: the petitioner, a Bulgarian national, feared persecution for his anti-Communist union activism prior to his departure in 1990. He had been overtly threatened by pro-Communist coworkers before leaving Bulgaria. In agreeing with the conclusion of the BIA that Mitev's fears of future persecution were sincere but not objectively reasonable, we acknowledged "the hard truth that unpleasant and even dangerous conditions do not necessarily rise to the level of persecution." Mitev, 67 F.3d at 1331.
 
 
 12
 The petitioners complain that the Board failed to take administrative notice of recent political changes in Bulgaria. We note that the Board "may take administrative notice of changed conditions but is not required to do so." Ademi v. INS, 31 F.3d 517, 520 (7th Cir.1994) (discussing Kaczmarczyk v. INS, 933 F.2d 588 (7th Cir.), cert. denied, 502 U.S. 981 (1991)). In any event, the petitioners do not claim they ever raised this issue with the BIA, and thus they have failed to exhaust their administrative remedies. Id. Indeed, the petitioners state that they have filed a motion to reopen with the Board concerning the changed conditions. It does not appear from the record that the Board has yet ruled on the motion.
 
 III
 
 13
 For the foregoing reasons, the petition for review is DENIED.
 
 
 
 [1]
 The BIA's order stated in relevant part:
 PER CURIAM. The appeal filed by the respondents is dismissed. We have reviewed the record of proceedings, the immigration judge's decision, and the respondents' contention [sic] on appeal. As we find that the immigration judge adequately and correctly addressed the issues raised on appeal, his comprehensive and well-reasoned decision is affirmed based upon and for the reasons set forth in that decision.