# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 04-1761

JOSE L. LOPEZ-CHAVEZ,

*Petitioner*,

v.

JOHN D. ASHCROFT,

*Respondent.*

———————

On Petition for Review of an Order of
the Board of Immigration Appeals.
No. A77 775 099

———————

SUBMITTED APRIL 29, 2004—DECIDED SEPTEMBER 9, 2004

———————

Before COFFEY, KANNE, and DIANE P. WOOD, *Circuit
Judges.*

DIANE P. WOOD, *Circuit Judge.* Aliens seeking judicial
review of immigration decisions routinely file motions to
stay removal pending appeal, and it is well-established that
this court has jurisdiction to grant such stays. See, *e.g.,*
*Sofinet v. INS,* 188 F.3d 703 (7th Cir. 1999) (*Sofinet I*). Less
commonly, aliens also move to stay voluntary departure
orders. Although it is clear that the courts of appeals have
no jurisdiction over the original decision of the immigration
authorities to grant or deny the privilege of voluntary
departure, the question whether the date by which volun-
tary departure must take place can be stayed to preserve

the *status quo* pending judicial review presents a different issue. This court has never had occasion to decide expressly whether we have the authority to grant such a stay.

In the present case, petitioner Jose Lopez-Chavez filed a motion seeking two kinds of relief: first, a stay pending judicial review of his removal from the country, and second, a stay pending judicial review of the date by which his voluntary departure had to occur. Concluding that the merits of his underlying claims did not warrant any kind of stay, and observing that his voluntary departure period was set to expire three days after he filed his motion, this panel denied the motion with a note in the order that an opinion explaining the jurisdictional basis of our decision would follow. This opinion furnishes that explanation.

# I

Voluntary departure is an alternative to removal (as deportation is now called) that the immigration service may grant in its discretion. An alien who has been granted this privilege is entitled to leave the country at her own expense within a certain period of time (usually up to 60 days). 8 U.S.C. § 1229c(a), (b) (2004). For the government, voluntary departure expedites and reduces the cost of removal. *Rife v. Ashcroft*, 374 F.3d 606, 614 (8th Cir. 2004). For aliens, voluntary departure is desirable because it allows them to choose their own destination points, to put their affairs in order without fear of being taken into custody at any time, to avoid the stigma and various penalties associated with forced removals (including extended detention while the government procures the necessary travel documents and ineligibility for readmission for a period of five or ten years, see 8 U.S.C. § 1182(a)(9)(A)), and it facilitates the possibility of return to the United States, for example, by adjustment of status. *Rife*, 374 F.3d at 614; *Sofinet v. INS*, 196 F.3d 742, 748 (7th Cir. 1999) (*Sofinet II*). Alongside these

benefits, however, are some serious detriments to a voluntary departure. Although leaving the country no longer moots an alien's appeal if it falls (as Lopez-Chavez's does) under the permanent rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), see *Rife*, 374 F.3d at 615, departure makes it difficult as a practical matter for the alien to appeal the underlying immigration decision and subjects the alien, at least in an asylum case, to the risk that she will suffer the very persecution at issue in the proceeding (which obviously can include imprisonment or death) before the appeal can be completed. See *Rife*, 374 F.3d at 615; *Khalil v. Ashcroft*, 370 F.3d 176, 181 (1st Cir. 2004); *Nwakanma v. Ashcroft*, 352 F.3d 325, 327 (6th Cir. 2003) (per curiam). On the other hand, failure to depart voluntarily (if that privilege has been granted) carries its own penalties: relinquishment of any posted bond, a fine of between $1000 and $5000, and ineligibility for a period of ten years for various forms of immigration relief. 8 U.S.C. § 1229c(b)(3), (d). Thus, aliens who are granted voluntary departure face a difficult choice: either follow the rules, depart voluntarily, and obtain a few benefits, at the price of serious or fatal difficulty in pursuing relief and exposure to intolerable conditions in the country of destination; or break the rules by failing to leave, accept the penalties associated with that failure, and continue to press any appeals. See *Nwakanma*, 352 F.3d at 327; *Ademi v. INS*, 31 F.3d 517, 521 n.8 (7th Cir. 1994); *Kaczmarczyk v. INS*, 933 F.2d 588, 598 (7th Cir. 1991). But see *Ngarurih v. Ashcroft*, 371 F.3d 182, 194 (4th Cir. 2004) (positing that aliens must accept both benefits and burdens of voluntary departure if they apply for it). This case presents the question whether a court has the power to give some relief to an alien who has filed a timely motion to stay a voluntary departure (that is, the alien has requested the stay prior to the date fixed for departure).

As we indicated earlier, this case does *not* present the question whether courts have jurisdiction to review the

merits of an underlying decision on a request for voluntary departure; it is perfectly clear that they do not. 8 U.S.C. § 1229c(f) ("No court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure . . . ."); *Sofinet II*, 196 F.3d at 748. The question here is the distinct one whether, once the immigration authorities in their discretion have chosen to *grant* such a request, is it within the power of the court to stay the time by which the voluntary departure must take place? We must first clarify precisely what relief the alien is seeking when she moves to "stay" a voluntary departure order. Essentially, the alien seeks to ensure that if the voluntary departure period expires before the court reaches a decision on the petition for review (which almost always occurs, *see Ademi*, 31 F.3d at 521 n.8), she still will be able to depart voluntarily if the petition for review is denied. Staying a voluntary departure order merely tolls the voluntary departure period; after the stay expires (either because of an unfavorable decision or otherwise), the clock begins ticking again and the alien has the balance of the days left in which to leave the country. See *Desta v. Ashcroft*, 365 F.3d 741, 743-44 (9th Cir. 2004).

Although some of our cases might be read to suggest that courts do not have jurisdiction to stay voluntary departure orders, we have never decided this issue conclusively. Addressing a different question, this court held before the passage of IIRIRA that we lacked "authority" to reinstate (essentially, restart in full) a voluntary departure period after a decision on a petition for review, because only the immigration service possessed that discretion. See *Ademi*, 31 F.3d at 521; *Zulbeari v. INS*, 963 F.2d 999, 1001 (7th Cir. 1992); *Kaczmarczyk*, 933 F.2d at 597-98. Full reinstatement, however, is very close in practical effect to an initial grant of the privilege of voluntary departure, and thus those decisions merely reflect an effort not to undermine the immigration service's authority over initial grants. See *Ngarurih*, 371 F.3d at 197 (Gregory, J., dissenting); *Garcia v. Ashcroft*,

368 F.3d 1157, 1159 (9th Cir. 2004). Moreover, it is unclear from these cases whether we were recognizing a jurisdictional bar or merely a discretionary rule, for we also cautioned that we might reconsider our position should it appear that the immigration service was using its discretion not to extend voluntary departure periods in an effort to deter aliens from seeking judicial review of immigration decisions. See *Ademi*, 31 F.3d at 521 n.8; *Kaczmarczyk*, 933 F.2d at 598. More recently, we observed that IIRIRA stripped courts of jurisdiction to review the immigration service's decisions with respect to voluntary departure. See *Lalani v. Perryman*, 105 F.3d 334, 335-37 (7th Cir. 1997). In *Lalani*, however, the question concerned possible review of a decision by the responsible immigration official refusing to extend a voluntary departure date; the question of a court's power to preserve the *status quo* pending judicial review never came up. Current administrative regulations specify that only certain immigration officials have jurisdiction to extend the length of voluntary departure periods. See 8 C.F.R. § 1240.26(f) (2004) ("Authority to extend the time within which to depart voluntarily specified initially by an immigration judge or the Board is only within the jurisdiction of the district director, the Deputy Executive Associate Commissioner for Detention and Removal, or the Director of the Office of Juvenile Affairs.") But the regulation's label, "Voluntary departure—authority of the Executive Office for Immigration Review," suggests that it regulates the authority of only the executive branch, and not that of the courts. See *Khalil*, 370 F.3d at 181. But see *Reynoso-Lopez v. Ashcroft*, 369 F.3d 275, 280 (3d Cir. 2004) (holding that a court has no power to reinstate an already-expired time period for voluntary departure, and indicating in *dicta* that it similarly could not extend that period).

Several of our sister courts, including the Sixth, Eighth, and Ninth Circuits, have held recently that courts retain the equitable power to stay voluntary departure orders,

notwithstanding the restrictions that exist under IIRIRA, when such an action is taken to preserve meaningful judicial review. See *Rife*, 374 F.3d at 614-15 (8th Cir.); *Desta*, 365 F.3d at 747-48 (9th Cir.); *Nwakanma*, 352 F.3d at 327 (6th Cir.); *El Himri v. Ashcroft*, 344 F.3d 1261, 1262 (9th Cir. 2003). As the Ninth Circuit noted in *Desta*:

> IIRIRA does not specify the circumstances in which we may issue a stay of voluntary departure, and therefore does not act as a bar to the use of our equitable powers. IIRIRA deprives us of jurisdiction to review the decision by the BIA to grant or deny a request for voluntary departure, but we are not being asked to review such a decision. Desta has already been granted voluntary departure, once by the IJ and again by the BIA. Rather, . . . we are being asked to stop the voluntary departure clock from running while we consider Desta's petition for review, and to allow it to resume after we decide the merits of the petition.

365 F.3d at 747 (citations omitted).

On the other hand, at least one circuit has rejected this analysis, and another appears to have done so in *dicta*. In *Ngarurih*, 371 F.3d at 191-95, the Fourth Circuit held that courts do not have jurisdiction under IIRIRA to stay voluntary departure orders. In reaching this conclusion, the Fourth Circuit relied on IIRIRA's provisions in 8 U.S.C. § 1229c(f) that "[n]o court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure" and in §1252(a)(2)(B) that "[n]otwithstanding any other provision of law, no court shall have jurisdiction to review—(I) any judgment regarding the granting of relief under section . . . 1229c." See *id.* at 193. But we agree with the dissent in *Ngarurih* that these provisions are best read to restrict judicial review of only *the initial decision* to grant or deny voluntary departure. See *id.* at 197-98 (Gregory, J., dissenting). Additionally, the majority in *Ngarurih* noted

that there is no longer a practical rationale for staying voluntary departure because leaving the country no longer moots an alien's appeal. See *id.* at 192. True—but this analysis underestimates the difficulty that aliens will likely encounter in pursuing appeals from afar and the possibility that they will be subjected to the persecution that they are trying to avoid before relief on appeal may be granted. The Third Circuit rejected the power to *reinstate* a voluntary departure period in *Reynoso-Lopez, supra*, using language that also appeared to cover extensions. It did not, however, expressly address the case of a person who filed a timely motion for a stay, in conjunction with a properly filed petition for judicial review, before the time to depart had expired.

Based on these considerations, we find persuasive the analysis of the majority of the circuits that have addressed the issue and hold that in an appropriate case, one that falls under the permanent IIRIRA rules and in which the time for voluntary departure has not yet run, nothing in IIRIRA divests us of the power to grant a stay tolling the time for departure until the completion of judicial review if the other prerequisites to such equitable relief are satisfied. This rule does not contravene any restrictions on judicial review that exist under IIRIRA because, as explained in *Desta*, a stay in conjunction with judicial review does not and cannot have an effect on the decision whether to grant or deny voluntary departure in the first place, nor does it change the amount of time granted—it merely preserves the balance of days left in the voluntary departure period. This allows aliens in deserving cases to pursue judicial review without flouting their voluntary departure orders, thus upholding the equitable considerations first expressed in this court's opinions in *Ademi* and *Kaczmarczyk*.

In Lopez-Chavez's case, the decision reflected in our order was a decision that Lopez-Chavez was not entitled to such a stay on the merits, not a decision that we lacked power to

consider his request. We express no opinion at this time on the question whether we would have the power somehow to stay voluntary departure if the permissible time period expired before the filing of the stay motion (which could be seen as the practical equivalent of "reinstating" the voluntary departure period).

## II

We conclude with a brief word about our evaluation of Lopez-Chavez's twin requests for a stay of removal and a stay of voluntary departure. One of the factors that we consider in evaluating such requests is likelihood of success on the merits. See *Sofinet I*, 188 F.3d at 706. That alone is fatal to Lopez-Chavez's motion. By way of background, in 1999 Lopez-Chavez, a native of Mexico living in the United States, submitted by mail an application for adjustment of his immigration status to that of a lawful permanent resident under Section 245(I) of the Immigration and Nationality Act, 8 U.S.C. § 1255(I). The former Immigration and Nationalization Service (INS) denied his application because an immigrant visa was not immediately available; it did not return to him either his application or the filing fee. Rather, using the information that he provided on the application, the INS initiated removal proceedings against him. Lopez-Chavez contested removability and moved to suppress the information contained on his application, which the INS conceded was the only evidence it had of his alienage and removability. He argued that his application should have been suppressed because the INS violated its own regulations by not returning the application to him once it concluded that a visa was not available, and that without the information contained in the application, there was no evidentiary basis supporting his removal from the country. An Immigration Judge (IJ) rejected this argument, holding that the INS had not violated its regulations and

that, even if it had, the violation did not require the evidence to be excluded.

Even if Lopez-Chavez could show that an administrative violation of this sort requires suppression of his application, see *Martinez-Camargo v. INS*, 282 F.3d 487, 491 (7th Cir. 2002), the IJ concluded correctly that the INS had not violated its regulations. The regulation that governed the processing of applications for adjustment of status, 8 C.F.R. § 245.2(a)(2)(I) (2000), indicates that the INS was required to return applications only in specified circumstances:

> Before an application for adjustment of status under section 245 of the Act may be considered properly filed, a visa must be immediately available. If a visa would be immediately available upon approval of a visa petition, the application will not be considered properly filed unless such petition has first been approved. If an immediate relative petition filed for classification under section 201(b)(2)(A)(I) of the Act or a preference petition filed for classification under section 203(a) of the Act is submitted simultaneously with the adjustment application, the adjustment application shall be retained for processing only if approval of the visa petition would make a visa immediately available at the time of filing the adjustment application. If the visa petition is subsequently approved, the date of filing the adjustment application shall be deemed to be the date on which the accompanying petition was filed.

But, as the IJ pointed out, Lopez-Chavez's application did not meet the one condition for which the obligation to return was clear, namely, submitting an application simultaneously with an immediate relative petition or a preference petition. Moreover, the INS's operations instructions stated that applications received *by mail* for which visas were not available *were not* to be returned to applicants:

> An application received *by mail* accompanied by the proper fee shall be immediately reviewed upon receipt

> in Examinations. . . . An application submitted without fee or without signature should be returned to the applicant by RA&I (AM 2793.24) and shall not be routed to Examinations. When Examinations determines that an application has not been properly filed because a visa is not available and that availability of a visa cannot be achieved by approval of a visa petition or issuance of a labor certification, the application *shall not be returned* to the applicant; instead, he/she shall be sent an explanatory notice of rejection with such other advice as may be appropriate and shall be informed that a refund of his/her fee is being considered.

OI § 245.2(a) (emphasis added). The IJ found that Lopez-Chavez submitted his application by mail, and Lopez-Chavez does not claim otherwise. Therefore, it does not appear that the INS violated its regulations by retaining Lopez-Chavez's application—to the contrary, it followed the operations instruction in OI §245.2(a) by *not* returning it—and thus, exclusion of the application as evidence of his removability was not warranted.

The merits of Lopez-Chavez's underlying claims thus did not warrant either a stay of removal or a stay of the voluntary departure order. For these reasons, both requests were DENIED. Finally, we note that after the denial of Lopez-Chavez's stay motion and his departure from the country, he moved voluntarily to dismiss his petition for review. See FED. R. APP. P. 42(b). This motion is GRANTED and his petition for review is DISMISSED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*