**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NIKOLAY ALEXANDROVICH DZYUBA,
                                    *Petitioner,*

            v.

MICHAEL B. MUKASEY, Attorney
General,

                                    *Respondent.*

No. 06-74372

Agency No.
A71-084-224

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
July 8, 2008—Seattle, Washington

Filed August 25, 2008

Before: Kim McLane Wardlaw, Richard R. Clifton, and
N. Randy Smith, Circuit Judges.

Per Curiam Opinion

11649

**COUNSEL**

Vicky Dobrin and Hilary A. Han, Dobrin & Han, PC, Seattle, Washington, for the petitioner.

Ada E. Bosque and Peter D. Keisler, United States Department of Justice, Washington, D.C.; Alison Marie Igoe and Jeffrey L. Menkin, Office of Immigration Litigation, Washington, D.C., for the respondent.

## OPINION

PER CURIAM:

Nikolay Alexandrovich Dzyuba ("Dzyuba"), a Georgian native and citizen of the former Union of Soviet Socialist Republics, petitions for review of the order of the Board of Immigration Appeals ("BIA") removing him to the Ukraine. The BIA upheld Dzyuba's removal to the Ukraine pursuant to 8 U.S.C. § 1231(b)(2)(E)(i), which permits the Attorney General to remove an alien to "[t]he country from which the alien was admitted to the United States."

In November of 1965, Dzyuba was born in Georgia, then a constituent republic of the U.S.S.R. Seven years later, he and his family left Georgia and traveled to the Ukraine, another area within the U.S.S.R. After suffering what he considers persecution due to his Pentecostal religion, Dzyuba left the Ukraine—when it was still part of the Soviet Union—in July 1991 to emigrate to the United States.

Two years after entry as a refugee, the United States granted Dzyuba legal permanent residence. However, when Dzyuba applied for naturalization in 2002, a Department of Homeland Security officer arrested him on the basis that he was removable from the United States for two convictions for crimes involving moral turpitude, *id.* § 1227(a)(2)(A)(ii); a conviction for an aggravated felony, *id.* § 1227(a)(2)(A)(iii); and a conviction for a crime involving domestic violence, *id.* § 1227(a)(2)(E)(i). Conceding removability, Dzyuba applied for withholding of removal and protection under the United Nations Convention Against Torture. After review, the BIA determined that Dzyuba should be removed to the Ukraine pursuant to § 1231(b)(2)(E)(i).

**[1]** The BIA based its holding on a finding that Dzyuba entered the United States with a Ukranian passport. Substantial evidence does not support the BIA's finding. Rather, the

passport in the record reflects that Dyzuba entered the United States with a passport issued by the Soviet Union and stamped with the date of his entry to the United States, July 5, 1991. Because the BIA relied on this erroneous finding when applying § 1231(b)(2)(E)(i), it failed to address the novel legal question Dzyuba's petition actually presents: whether the Ukraine, as of the date of Dzyuba's entry, qualifies as a "country," as the term is used in the Immigration and Nationality Act ("INA"), from which he was admitted.[1] The term "country" has multiple ordinary definitions, alternatively denoting an independent political entity or merely a geographic region without reference to political sovereignty. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 521 (1986). The question the BIA must address in the first instance is whether "country," as used in the INA, requires an independent political entity or encompasses a non-sovereign region within another sovereign.

[2] Courts have defined "country" in the context of predecessor statutes to the INA, *see United States ex rel. Mensevich v. Tod*, 264 U.S. 134, 136 (1924) (interpreting the Immigration Act of 1917); parallel statutory schemes, *see Bajalieh v. Beechie*, 309 F.2d 386, 389 (9th Cir. 1962) (interpreting the Refugee Relief Act of 1953); and in determining whether American political recognition was required to qualify under the current statutory scheme, *see Ademi v. INS*, 31 F.3d 517, 521 n.7 (7th Cir. 1994). These cases are not dispositive of the precise question presented here because we construe the meaning of a given word by reference to the context of a particular statutory regime. *See United States v. TRW Rifle 7.62X51mm Caliber, One Model 14 Serial 593006*, 447 F.3d 686, 690 (9th Cir. 2006) ("[W]e do not ascertain ordinary meaning in the abstract. Rather, we must decide which of these definitions, if any, is consistent with the context of the statute."). Through § 1231(b)(2)(E), Congress developed

---

[1]The Ukraine did not become an independent nation until August 24, 1991, seven weeks after Dzyuba entered the United States.

an intricate statutory scheme, replete with seven discrete means to determine the appropriate place to which an alien is removable. We are reluctant to assume that what "country" meant in the context of other statutes is readily applicable to the current statutory scheme. Moreover, Congress used the term "country" numerous times within the INA itself, and we must construe the term to have the same meaning each time it is used in the Act. *See Pasquantino v. United States*, 544 U.S. 349, 358-59 (2005) ("To give these same words a different meaning for each category would be to invent a statute rather than interpret one.") (citation omitted).

**[3]** Because of the deference we owe the BIA in its role in determining in the first instance whether pre-independent Ukraine qualifies as a "country," *see Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-45 (1984), we remand Dzyuba's petition to the BIA to determine what Congress meant when it used the term "country" in the removal context. *See Gonzales v. Thomas*, 547 U.S. 183 (2006) (holding that remand was appropriate remedy where BIA had not yet determined whether a "family" could constitute a "social group" within the meaning of 8 U.S.C. § 1101(a)(42)(A)).

**VACATED AND REMANDED.**