# United States Court of Appeals
## For the First Circuit

---

No. 00-1743

YURY YATSKIN,

Petitioner, Appellant,

v.

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent, Appellee.

---

PETITION FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

---

Before

Boudin, <u>Chief Judge</u>,

Torruella, <u>Circuit Judge</u>,

and Stahl, <u>Senior Circuit Judge</u>.

---

<u>John H. Ruginski, Jr.</u>, for petitioner.
<u>Lyle D. Jentzer</u>, with whom <u>David W. Ogden</u>, Assistant Attorney
General and <u>Terri J. Scadron</u>, Senior Litigation Counsel, were on brief,
for respondent.

---

July 6, 2001

---

**TORRUELLA, Circuit Judge.** Appellant Yury Yatskin, a Russian citizen, appeals a final order of deportation issued by the Board of Immigration Appeals ("BIA"). Affirming the oral decision of the immigration judge, the BIA held in a per curiam order that Yatskin had failed to show that he had suffered persecution on account of his anti-Communist beliefs or that he would face mistreatment due to such beliefs if he were to return to Russia. We affirm.

## BACKGROUND

Yatskin is a seaman by trade who jumped ship in Providence, Rhode Island on January 4, 1994. He immediately requested asylum. While conceding his deportability, Yatskin sought asylum pursuant to Section 208(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(a) & 1101(a)(42)(A), withholding of deportation under Section 243(h) of the INA, 8 U.S.C. § 1253(h),[1] and, in the alternative, voluntary departure. As grounds for his asylum request, Yatskin claimed that he would be persecuted for his anti-Communist beliefs by the Communists who remain in Russia if he were compelled to return there.

In his Statement in Support of Application for Political Asylum, Yatskin gave the following account. As a teenager, he had been encouraged repeatedly to join the Communist youth group, Comsomol,

---

[1] This statute was rewritten in 1996, and is now found at 8 U.S.C. § 1231(b)(3) in substantially the same form.

which he refused to do.  This led to clashes with administrators and teachers at his high school.  Following high school, he worked in a track company,[2] where he was often in conflict with Party officials at the factory over his outspoken criticism of the Communist government. In June 1979, Yatskin was arrested by the KGB and held for three days, during which time he was beaten.  He suffered a broken arm and shoulder from the beatings, and spent six weeks in the hospital recovering. Upon his release, Yatskin learned that he had been fired from the track company.

In August 1979, Yatskin found work in a coal mine but was fired shortly thereafter for problems with Party officials.  He served a compulsory military term from 1980 through 1982, and caused no trouble there after being warned that he would be dealt with severely otherwise.

In 1982, Yatskin could not find work in his hometown of Lugansk, Ukraine because his opposition to the Communist government was well-known.  His youngest brother also could not find work, purportedly due to Yatskin's outspokenness.  His older brother was fired from his job for the same reason.  Yatskin moved to Murmansk, Russia in an effort to secure employment.  He was hired in 1984 to work on a fishing trawler, and immediately quarreled with the resident KGB officer on the

---

[2]  There is no explanation in the record of precisely what a "track company" is.

ship. The KGB officer told Yatskin that the KGB was watching him and knew all that he had done. For the next seven years, Yatskin avoided problems with the Communists.

In 1991, while in port in Boston, Massachusetts, the attempted coup by Communist hardliners against the Gorbachev government took place in Russia. Several of the crew, led by Yatskin, wanted to "send a message to Boris Yeltsin in support of his efforts"[3] through the ship's telegraph. The ship's captain refused their request to send the message, but they did so anyway. Back in Murmansk in October 1993, Yatskin observed a protest march by the Communists, which he characterized as "illegal." He objected to their protest and was beaten as a result. A friend later called and told him that the Communists were out to get him.

Yatskin concluded his written statement by claiming that the Communists still retain control of many branches of the Russian government, including the KGB and other organizations, and that he would be persecuted by the Communists if he were to return to Russia.

Yatskin's oral testimony before the immigration judge varied, sometimes substantially, from his written statement. Most critically, he testified to two additional arrests, one in 1991 upon his return to Russia and following the incident of unauthorized message sending, and

---

[3] Yeltsin, who had been elected President of Russia in 1990, opposed the coup leaders and called for the restoration of Gorbachev to his position as President of the Soviet Union.

-4-

again in 1993 following his protest of the Communist march.  When asked why the 1991 and 1993 arrests were not contained in his written statement, Yatskin claimed that he had a poor Russian interpreter.  He could offer no further explanation as to why the 1991 and 1993 arrests were omitted from his application.

The immigration judge ruled against Yatskin's petition for asylum in an oral decision on October 25, 1996.  Taking "administrative notice" that Boris Yeltsin was the current, democratically-elected president of Russia, and finding that there was no evidence in the record to support Yatskin's assertion that the Communists were still in control of Russia, the judge held that Yatskin had failed to meet his burden of showing that he would be persecuted or had a well-founded fear of persecution if he were to return to Russia.  As to Yatskin's withholding of deportation petition, the immigration judge noted that the burden of proof is higher than that necessary to qualify for asylum.[4]  Since Yatskin did not meet his burden for asylum, the immigration judge held that he had also failed to do so for withholding of deportation.  The judge allowed the motion for voluntary departure in lieu of deportation.

In a per curiam opinion, the BIA dismissed Yatskin's appeal. Finding the evidence insufficient to show that Yatskin was either

---

[4] We have held the same.  See, e.g., Aguilar-Solís v. INS, 168 F.3d 565, 569 n.3 (1st Cir. 1999).  Perhaps recognizing such, Yatskin has not appealed the denial of his petition for withholding of deportation.

persecuted in the past on the basis of his anti-Communist beliefs or that he had a well-founded fear of persecution if he were to return to Russia, the BIA upheld the determination of the immigration judge.[5] The BIA also granted Yatskin voluntary departure within thirty days of the order.

### DISCUSSION

Deportation proceedings were initiated against Yatskin prior to April 1, 1997 and the final deportation order issued after October 31, 1996. This case, therefore, is governed by the "transitional rules" for judicial review found in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C, § 309(c)(4), 110 Stat. 3009-546, 3009-625 to 627. The transitional rules dictate that former Section 106 of the INA applies, which states: "the petition shall be determined solely upon the administrative record upon which the deportation order is based and the Attorney General's findings of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive." 8 U.S.C. § 1105a(a)(4) (repealed).

As dictated by the above statute, we review a denial of a petition for asylum by the BIA under a substantial evidence standard.

---

[5] It has been correctly pointed out by both sides that the immigration judge made no finding on whether Yatskin had successfully demonstrated past persecution.

-6-

We will not reverse the BIA's decision unless "the record evidence would compel a reasonable factfinder to make a contrary determination." Aguilar-Solís v. INS, 168 F.3d 565, 569 (1st Cir. 1999). Put more strongly, Yatskin "must show that the evidence he presented was so compelling that no reasonable factfinder could fail to find" that he was eligible for asylum. INS v. Elías-Zacarías, 502 U.S. 478, 483-84 (1992).

In order to obtain asylum, Yatskin bears the burden of proving that he qualifies as a "refugee." See 8 U.S.C. § 1158(b)(1); 8 C.F.R. § 208.13(a). A "refugee" is defined as someone unwilling or unable to return to his country of nationality and unwilling or unable to avail himself of the protection of that country due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). A petitioner can meet this burden in one of two ways: (1) by demonstrating past persecution, thus creating a presumption of a well-founded fear of persecution; or (2) by demonstrating a well-founded fear of persecution. 8 C.F.R. § 208.13(b); see, e.g., Morales v. INS, 208 F.3d 323, 329 (1st Cir. 2000) (on rehearing).

If an applicant can prove past persecution, a regulatory presumption that the applicant has a well-founded fear of future persecution is triggered. 8 C.F.R. § 208.13(b)(1). The burden then

shifts to the INS to show by a preponderance of the evidence, id. § 208.13(b)(1)(ii), that conditions in the country of the applicant's nationality have changed "such that the applicant no longer has a well-founded fear of persecution," id. § 208.13(b)(1)(i)(A). Yatskin argues that he demonstrated past persecution, and thus should be entitled to the well-founded fear presumption. The INS contradicts this claim, citing the BIA conclusion that "the evidence is insufficient to show that the respondent was persecuted on account of his anti-communist beliefs."

In finding Yatskin to be ineligible for asylum, neither the immigration judge nor the BIA provided much basis for their conclusions. The immigration judge failed to make any determination as to whether Yatskin had proven past persecution, instead stating unilaterally that he failed to show a well-founded fear of persecution, and citing only the changed political situation in Russia since the time that Yatskin left in 1993. The BIA offered little more. While the latter decision stated that Yatskin had not established past persecution or a well-founded fear of future persecution, it purported to uphold the immigration judge's "determination" as to both points. The order then pointed to the Department of State Country Report for Russia detailing the changed conditions since Yatskin was last there. There was no substantive commentary concerning the evidence Yatskin provided in support of his claim. As such, we have no explanation for

-8-

the BIA's statement that Yatskin's testimony failed to demonstrate past persecution.

This failure unnecessarily complicates our review. We have emphasized the need for "clear administrative findings" justifying BIA decisions. Gailius v. INS, 147 F.3d 34, 44 (1st Cir. 1998). Following administrative law principles, a reviewing court should judge the action of an administrative agency based only on reasoning provided by the agency, and not based on grounds constructed by the reviewing court. Id. As such, we are reluctant to analyze the BIA's blanket statement that Yatskin failed to prove past persecution.

However, even crediting Yatskin with establishing past persecution (and the attendant rebuttable presumption of a reasonable fear of future persecution), the evidence of changed conditions in Russia is sufficient to justify the BIA's denial of asylum. The 1995 United States Department of State "Profile of Asylum Claims and Country Conditions" for Russia, contained in the administrative record and cited by the BIA, states the following in reference to claims for asylum brought by anti-Communists: "It is highly unlikely that an individual returning to Russia now would face mistreatment because of any political views expressed or actions taken in the late eighties or early nineties, even if that individual suffered for those actions at that time." Bureau of Democracy, Human Rights & Labor, U.S. Dep't of

State, Russia-Profile of Asylum Claims & Country Conditions 5 (May 1995).[6]

In this case, the absence of any evidence either to contradict the State Department report or to show why general improved conditions do not affect Yatskin's particular risk of persecution leads us to the conclusion that Yatskin does not have an objectively reasonable fear of persecution. See Aguilar-Solís, 168 F.3d at 572. In holding this, we are mindful of our prior statement that: "Abstract 'changed country conditions,' do not automatically trump the specific evidence presented by the appellant." Fergiste v. INS, 138 F.3d 14, 19 (1st Cir. 1998). Of particular concern is the risk that the BIA might weigh reports of general changed conditions in a country over that of an individual's particular, substantiated fear of persecution. See Gailius, 147 F.3d at 45-46; Fergiste, 138 F.3d at 19.

On the other hand, "[c]hanged country conditions often speak volumes about the objective reasonableness of an alien's fear that persecution lurks should he return to his homeland." Aguilar-Solís, 168 F.3d at 572. While it is true that courts have discounted the relevance of State Department reports of improved country conditions, this is usually the case when the petitioner has presented powerful evidence that his particular fear of persecution remains well-founded.

---

[6] Although the report is now six years old, Yatskin has made no allegation that the situation in Russia has changed since that time in a way that would affect his asylum claim.

Reviewing the record as a whole, 8 U.S.C. § 1105a(a)(4), we find that this is not such a case.

In so ruling, we accept all of Yatskin's testimony as true, despite the apparent inconsistencies in his story relating to the number of times and durations of his arrests. See Gailius, 147 F.3d at 44 ("No finding was made by the agency, and it is for the agency, not the courts, to make findings of fact."). Even doing so, we find that Yatskin has introduced no evidence of threats of persecution since the early 1990s, when, according to the State Department report, conditions in Russia for anti-Communists changed significantly. See Aguilar-Solís, 168 F.3d at 573. When asked why he still feared persecution given the improved conditions in Russia, Yatskin could offer only that, according to his sources,[7] very little has changed in Russia. When asked: "[W]hat do you feel would happen to you if you went back to Russia at this time?," Yatskin replied that he wasn't sure. After testifying that his family had suffered retribution for his political actions, Yatskin admitted that they had not experienced any problems since 1993.

The testimony offered by Yatskin in favor of his asylum petition fails to undermine the State Department report that the

---

[7] Yatskin stated that he reads Russian newspapers and calls home regularly. When asked how often he spoke with his family, he replied that he had spoken with one of his brothers three or four times since leaving Russia.

situation in Russia has changed since the early 1990s in any way. <u>See</u>, <u>e.g.</u>, <u>Gailius</u>, 147 F.3d at 46 (petitioner produced expert witness testimony on conditions of petitioner's country that contradicted State Department report). The report is clear that the improved conditions occurred subsequent to Yatskin's departure from Russia. <u>See</u>, <u>e.g.</u>, <u>Galina</u> v. <u>INS</u>, 213 F.3d 955, 959 (7th Cir. 2000) (report did not state that conditions had <u>improved</u> in petitioner's country). Nor did he offer any evidence of threats to him or his family since that time. <u>See</u>, <u>e.g.</u>, <u>Vallecillo-Castillo</u> v. <u>INS</u>, 121 F.3d 1237, 1239-40 (9th Cir. 1997) (petitioner gave testimony of threats to family after country conditions allegedly improved). As illustrated above, Yatskin relies exclusively on his own "conclusory assertions of continuing danger." <u>Aguilar-Solís</u>, 168 F.3d at 572-73. Because of this, we hold that the presumption of a well-founded fear of future persecution has been effectively rebutted by the uncontested evidence of changed political conditions in Russia.

It may be tempting to summarily dismiss claims of political persecution brought by anti-Communists since the dismantling of the Soviet Union. That being said, this does not absolve an immigration judge's or the BIA's responsibility for offering precise, fact-specific justifications for denying such an asylum application. A failure to do so will only result in unduly complicated review and needless remands for further determinations.

Yatskin's previously granted petition for voluntary departure is reinstated.  See <u>Alvarez-Flores</u> v. <u>INS</u>, 909 F.2d 1, 8 (1st Cir. 1990).  The 30-day voluntary departure period shall commence on the date of the issuance of this Court's final mandate.  The decision of the BIA is **affirmed.**