# United States Court of Appeals
## For the First Circuit

No. 02-2344

SAID GUIRGUIS KHALIL,

Petitioner,

v.

JOHN ASHCROFT, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Lynch, Lipez, and Howard, <u>Circuit Judges</u>.

<u>Christopher W. Drinan</u> was on brief for petitioner.

<u>Robert D. McCallum, Jr.</u>, Assistant Attorney General, Civil Division, <u>Douglas E. Ginsburg</u>, Senior Litigation Counsel, Office of Immigration Litigation, and <u>Linda S. Wernery</u>, Senior Litigation Counsel, Office of Immigration Litigation, were on brief for respondent.

July 24, 2003

**LYNCH**, **Circuit Judge**.  Said Guirguis Khalil is an Egyptian native and citizen who entered the United States in 1996. He applied for asylum in 1998 based on both past persecution and a fear of future persecution, arising from his membership in the Coptic church.  An Immigration Judge found that Khalil did not have a well-founded fear of persecution and denied his request for asylum and withholding of deportation, but granted voluntary departure.  The Board of Immigration Appeals affirmed the Immigration Judge's decision.  Khalil petitions for review of the denial of asylum.  We affirm the denial.

## I.  Facts

Khalil entered the United States on a B-1 visa on April 25, 1996 at the age of 42.  His wife and two children remained in Egypt.  Khalil overstayed his six month visa.  He applied for asylum on March 30, 1998.  On May 18, Khalil was interviewed by an asylum officer, who found him credible but concluded that the harms he had suffered were not "on account" of one of the five protected grounds and that the alleged government misconduct did not rise to the level of persecution.  An order to show cause was issued on May 20.  In his removal proceedings, Khalil conceded deportability but sought asylum and withholding of removal, or alternatively voluntary departure, based on religion, membership in a particular social group, and political opinion.  Khalil sought asylum "to escape the persecution of Muslim fundamentalists in Egypt because

[he is] a Coptic Christian."  He stated that if he were "to return to Egypt after having lived in the United States, [he] would be viewed as having adopted Western ideas and as someone who promulgates Western ideology -- for which [he] would become [the] victim [of] even greater persecution by the Muslim fundamentalists."  He also said that fundamentalists would demand that he pay "protection money."

Khalil's case was heard before an Immigration Judge (IJ) on September 14, 1998 and again on January 6, 1999.  Khalil testified that he is a structural engineer.  As devout Coptic Christians, his family in Cairo was subjected to abuse by Muslims, including being labeled "kafirs" or infidels.  During his first year in college in Alexandria, Khalil was beaten by Muslim neighbors for touching a copy of the Koran.  According to Khalil, the beating left a scar on his face and broke one of his teeth.  He then transferred to a college located in Cairo.  There his graduation was delayed six months because he repeatedly failed a required course in Islamic Law.  His academic record was otherwise very good, and only Coptic Christian students failed the course, so Khalil attributed his failure to discrimination against Christians. After intervention by the dean, Khalil passed the course.

Khalil recounted that, after graduating from college, he entered the military for his five years' required service and suffered discrimination there.  His request for time off to

celebrate Easter was denied, despite the fact that leave for religious holidays was legally guaranteed, and his commanding officer detained Khalil in prison for a day for making the request. In the Sinai peninsula, Khalil's unit was assigned to remove land mines, and, even though rotation was normally required for land mine removal units, Khalil's unit (which was composed largely of Christians) was never rotated.

Following his military service, Khalil worked for a government-owned engineering firm for two years. There he was consistently assigned inferior work and sent to an undesirable location in southern Egypt. As a result, Khalil left Egypt and worked for two years in Saudi Arabia. In 1985, he returned to Egypt and started his own construction business. He built and sold apartments in Cairo. While his tenants were initially a mixture of Christians and Muslims, over time his buildings became predominantly Christian. Khalil estimated that approximately 90% of his tenants were Christians. In 1991, he sold an apartment to a patriarch of the Coptic church.

Khalil testified that this sale touched off a campaign against him. Two occupants of his building, members of the Muslim Brotherhood, told him that he would no longer be allowed to build because he was "creating an environment where Christians would gather and assemble." He was denied a building license by the government. At the same time, twenty-eight of Khalil's tenants

brought civil complaints against him, all of which were subsequently dismissed.[1] The record is silent as to the religious affiliation of those tenants. Because he could no longer build in Cairo, Khalil sold his property there and tried to build in a town in northwestern Egypt, but found that there too he could not obtain a license to build on land that he had purchased. From 1991 until 1996, Khalil tried without success to obtain a building permit for his new land. He lived off the proceeds from the sale of his house and his land in Cairo.

Frustrated by his inability to pursue his livelihood, Khalil left Egypt in 1996 for the United States. Khalil admitted to the IJ that his purpose was "to come here and start a new life," because he was unable to earn a living in Egypt. When the IJ asked Khalil if his reasons for coming were economic, he responded "It's not economic, sir, I [was] prevent[ed] from doing my job. Anybody prevent[ed] in this country from doing his job, how can he live[?] [I was] fired from my job for five years but I can't continue." Khalil also told the IJ that his wife and children had joined him in the United States in the last two weeks, and that, even though they had arrived on visitor visas, Khalil intended that they would stay in the United States with him after the expiration of those visas.

---

[1] During his asylum assessment interview, Khalil told the asylum officer that the suits were dismissed only when Khalil promised "never to build again."

-5-

One of Khalil's siblings lives in the United States; four remain in Cairo. Of those four, none has been prevented from pursuing a career. One brother is a general manager for Mercedes. A second brother is a doctor. A third brother works as a subcontractor. A sister works as an English teacher. During his hearing, Khalil said that an uncle who farms was buried up to his chest by people who feared he would construct a church on his lands. Other than that uncorroborated incident, Khalil did not present evidence that any of his relatives had suffered at the hands of fundamentalists. Indeed, they were able to pursue their careers relatively unhindered.

In addition to his testimony, Khalil produced voluminous documentation of discrimination against and persecution of Coptic Christians in Egypt. Cf. El Moraghy v. Ashcroft, 331 F.3d 195, 201 (1st Cir. 2003) (discussing persecution of Coptic Christians in Egypt). Khalil also submitted an affidavit from Denis J. Sullivan, a professor of Middle Eastern politics at Northeastern University who specializes in Egypt. Sullivan stated "it is clear that Mr. Khalil is in serious danger of being a target for more of the same [economic boycotting and public denunciation] as well as for more intense actions, including physical persecution," should he return to Egypt. Sullivan based his conclusion on the fact that Khalil had been publicly labeled a "kafir" by militants, and on government complicity in interfering with Khalil's livelihood. He pointed out

that fundamentalist Muslims were as active in urban areas, such as Cairo, as in the rural south. "Wealthy and/or 'high profile' Copts" were likely to be targeted by fundamentalists, according to Sullivan.

The IJ issued an opinion on April 22, 1999. He surveyed the documentary and testimonial evidence presented by Khalil. He concluded:

> The respondent in these proceedings has not submitted any evidence which I find would subject him to persecution or having a well-founded fear of persecution on account of his race, religion, nationality, membership in a particular social group, or political opinion.
> . . . .
> A reasonable person similarly situated as the respondent, based on this record, would not fear persecution, [or] have a well-founded fear of persecution if returned to Egypt.

The IJ focused on Khalil's siblings' ability to pursue their careers and on the unclear relationship between Khalil's religion and the denial of his building permit. He denied Khalil's request for asylum and withholding of removal, but granted voluntary departure.

Khalil timely appealed the IJ's decision to the Board of Immigration Appeals (BIA). The BIA upheld the decision in an order dated September 23, 2002. It rejected Khalil's contention that he was denied a fair hearing, finding that there was nothing to indicate that the IJ was biased or declined to consider evidence. It found that Sullivan's affidavit did not bear on the question of past persecution, and concluded Khalil "failed to meet his burden

-7-

to establish past persecution, and a well-founded fear or clear probability of persecution in Egypt on account of a protected ground[]."  The BIA upheld the IJ's grant of voluntary departure. The BIA also denied Khalil's motion to remand to allow him to apply for protection under the Convention Against Torture.

Khalil petitions for review of the BIA's order, asserting that the decision was not supported by substantial evidence and violates due process of law.[2]  We affirm the BIA's decision.[3]

## II.  Analysis

The BIA's determination "must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole."  INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (internal quotation omitted).  "It can be reversed only if the evidence presented by [petitioner] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed."  Id.; accord Albathani v. INS, 318 F.3d 365, 372 (1st Cir. 2003).

The petitioner bears the burden of establishing eligibility for asylum by proving that he qualifies as a refugee. 8 U.S.C. § 1158(b)(1) (2002); 8 C.F.R. § 208.13(a).  A petitioner

---

[2]  Khalil does not appeal the denial of his motion to remand.

[3]  The Attorney General has been substituted for the Immigration and Naturalization Service as respondent.  See Fesseha v. Ashcroft, 333 F.3d 13, 16 n.5 (1st Cir. 2003); 8 U.S.C. § 1252(b)(3)(A) (2000).

can do so either: "(1) by demonstrating past persecution, thus creating a presumption of a well-founded fear of persecution; or (2) by demonstrating a well-founded fear of persecution." Yatskin v. INS, 255 F.3d 5, 9 (1st Cir. 2001) (citing 8 C.F.R. § 208.13(b)). To prove past persecution, an applicant must demonstrate that he has suffered persecution on one of the five enumerated grounds: race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 208.13(b)(1). To establish a well-founded fear of future persecution, applicants can offer specific proof, or they can claim the benefit of a regulatory presumption based on proof of past persecution. Guzman v. INS, 327 F.3d 11, 15 (1st Cir. 2003) (citing 8 C.F.R. § 208.13(b)(1)); Velasquez v. Ashcroft, 316 F.3d 31, 35 (1st Cir. 2002) (same).

In order to demonstrate a well-founded fear of persecution by direct evidence, a petitioner must satisfy both an objective and a subjective test. Velasquez, 316 F.3d at 35. "Under the subjective requirement, a petitioner must prove that his fear is genuine, while the objective component requires showing by 'credible, direct and specific evidence' that this fear is reasonable." Id. (citation omitted) (quoting Ravindran v. INS, 976 F.2d 754, 758 (1st Cir. 1992)).

We hold that the BIA's decision was supported by substantial evidence for the same reasons that the initial

-9-

interviewing officer concluded that Khalil was ineligible for asylum: Khalil did not establish that the harms he described -- denial of building permits and civil suits brought by his tenants -- were "on account of" religion, and, even if we assume in his favor that they were, they do not rise to the level of persecution. Nothing in the record compels the opposite conclusion.

Khalil bears the burden to show that the alleged persecution took place on account of his religion. Because the motive for the persecution is critical, a petitioner "must provide some evidence of it, direct or circumstantial." Elias-Zacarias, 502 U.S. at 483. The denial of the building permits is the lynchpin of Khalil's asylum claim. Yet, Khalil's theory as to why they were denied is just that: a theory. He presents no evidence other than his own speculation to link the denial to his faith. As for the civil suits, as the IJ points out, the majority of his tenants at the time were fellow Christians.

Even if we assume dubitante in Khalil's favor that these acts did occur on account of his religion, they do not compel a finding that Khalil was persecuted. "To qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering." Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000). Further, Khalil's assertion that he was beaten over 25 years ago, while in his first year of college, is both uncorroborated and -- by his own telling -- an isolated incident.

The record does not compel the finding that Khalil suffered past persecution.

In determining whether an applicant has a well-founded fear of future persecution, we "narrow the relevant inquiry to whether a reasonable person in the asylum applicant's circumstances would fear persecution on account of a statutorily protected ground." Aguilar-Solis v. INS, 168 F.3d 565, 572 (1st Cir. 1999). Here, the IJ correctly noted the experience of Khalil's siblings in Cairo -- all of whom appear to be the kind of wealthy and/or high profile Coptic Christians described by Professor Sullivan. According to Khalil, his family members all suffered the indignity of being publicly called "kafirs." Yet none of them has been prevented from pursuing his or her career of choice, let alone suffering the type of harm necessary to establish persecution. Again, the evidence does not compel the conclusion that Khalil had a well-founded fear of persecution. The denial of asylum is upheld.

Khalil's request for withholding of deportation necessarily fails. As the withholding of deportation standard is more difficult to meet than the asylum standard, "a petitioner unable to satisfy the asylum standard fails, a fortiori, to satisfy the former." Fesseha v. Ashcroft, 333 F.3d 13, 17 n.6 (1st Cir. 2003) (citation omitted).

Petitioner also raises a due process claim.  Khalil argues that the BIA's decision does not "reflect the consideration of all relevant and probative evidence produced by the petitioner." Specifically, Khalil objects to the structure of the IJ's decision, which he characterizes as lacking any real analysis, and to the IJ's supposed disregard of the Sullivan affidavit.  This claim largely repeats Khalil's substantial evidence argument and lacks any merit.  Our review of the record does not reveal any indication that the IJ ignored substantial evidence in this case.  An IJ need not discuss each piece of evidence.  Morales v. INS, 208 F.3d 323, 328 (1st Cir. 2000).  In this case, moreover, both the IJ and the BIA decision expressly discuss Sullivan's affidavit.

### III.

The decision of the BIA is affirmed.  The BIA's grant of voluntary departure is reinstated.  See Yatskin, 255 F.3d at 11.