# United States Court of Appeals
## For the First Circuit

No. 03-1934

SAID GUIRGUIS KHALIL,

Petitioner,

v.

JOHN ASHCROFT, Attorney General,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lynch, Circuit Judge.

Christopher W. Drinan for petitioner.

Daniel Meron, Civil Division, with whom Peter D. Keisler, Assistant Attorney General, Civil Division, and David V. Bernal and M. Jocelyn Lopez Wright, Assistant Directors, Office of Immigration Litigation, were on brief, for respondent.

June 3, 2004

**LYNCH**, **Circuit Judge**.   On July 24, 2003, this court affirmed a September 2002 decision by the Board of Immigration Appeals (BIA) denying asylum and withholding of deportation to Said Guirguis Khalil.  Khalil v. Ashcroft, 337 F.3d 50, 54, 56 (1st Cir. 2003).  The BIA had granted Khalil a thirty-day period of voluntary departure, which expired while his petition for review was pending before this court.  We, as a matter of grace, reinstated that thirty-day departure period so that Khalil could leave the country voluntarily without incurring the penalties for forcible removal. Id. at 56.  In doing so, we applied the rule of Umanzor-Alvarado v. INS, 896 F.2d 14 (1st Cir. 1990) (Breyer, J.), which held that courts have the inherent equitable authority to decide on a case-by-case basis to reinstate the period of voluntary departure earlier granted by the BIA as part of their review of petitions challenging BIA actions.  Id. at 16.  The penalties for failing to depart within the designated voluntary departure period are significant.  Violators may be fined $1,000 to $5,000 and are ineligible for ten years for further grants of voluntary departure, cancellation of removal, adjustment of status, change of nonimmigrant classification, or creation of a record of lawful admission for permanent residence.  8 U.S.C. § 1229c(d).  In addition, if a default removal order has been entered, violators may be deported and, accordingly, be prevented from returning to the United States without the prior consent of the Attorney General

-2-

for either five or ten years, depending on the circumstances. See id. § 1182(a)(9)(A).

Khalil did not leave within the thirty days he had been given by this court. Instead, Khalil waited (without seeking an extension of that thirty-day period) to see how this court would decide the instant case: a second petition for review, filed earlier on July 2, 2003, from the BIA's denial of his separate motion to reopen for adjustment of status. The BIA had denied Khalil's petition on the ground that he was not eligible for adjustment of status because he had overstayed the voluntary departure period originally granted by the BIA in September 2002. Khalil did not seek any interim relief from this court pending review of his second petition. In this petition, he argues that our earlier reinstatement of the privilege of voluntary departure for a limited period operates retroactively and means that the BIA's basis for denying his motion to reopen is now wrong.

We affirm the BIA's decision and hold that this court's reinstatement of the privilege of voluntary departure did not have retroactive effect and thus does not provide a basis to overturn the BIA's denial of Khalil's motion to reopen.

We also outline, for the purpose of alerting aliens and the bar to the issue, a broader argument that the respondent chose to make in this case: that federal courts lack the power to reinstate the privilege of voluntary departure as part of their

review of petitions challenging BIA actions and, in the alternative, that if the courts have such power, it is restricted to situations in which a petitioner moved for a stay from the court before the voluntary departure period granted by the agency expired. The respondent, recognizing that Umanzor-Alvarado conflicts with its position, identifies changes in the statutory scheme and asks us to overrule that case. We reserve the issue of the bounds of this court's authority for another case where resolution of that issue is required.

## I.

On September 23, 2002, the BIA affirmed an immigration judge's order denying Khalil asylum and withholding of deportation, and gave Khalil thirty days from the date of the order to voluntarily depart. Khalil had claimed religious persecution as a Coptic Christian in Egypt. The BIA's order included a written notice outlining the statutory penalties for failing to depart within the allotted time. The BIA also entered a default order of removal to Egypt if Khalil failed to depart on time.

Khalil did not depart, but appealed the BIA's order to this court on October 22, 2002. He asked the Immigration and Naturalization Service (INS)[1] to extend his period of voluntary

---

[1] In March 2003, the relevant functions of the INS were transferred into the new Department of Homeland Security and reorganized into the Bureau of Immigration and Customs Enforcement (BICE). For simplicity, we refer to the agency throughout this opinion as the INS.

-4-

departure pending our review. The INS denied his request and set a new January 9, 2003 departure date.

On November 26, 2002, he filed a separate motion with the BIA to reopen proceedings in order to adjust his status based on an immigrant visa petition filed by his employer and approved by the INS on November 18. See 8 U.S.C. § 1255(i)(1) (allowing adjustment of status based on such a visa petition, provided certain conditions are fulfilled). Khalil did not raise in that motion the possible effect of an order from this court reinstating the period of voluntary departure.

The January 9 deadline passed, but Khalil did not leave. Nor did he file with this court a motion to stay removal or toll the running of the period for voluntary departure.[2] We note, though, that the INS had neither detained Khalil nor scheduled him for removal, so there was no event (apart from the passing of the January 9 deadline) that would have prompted Khalil to seek a stay from the court.

The BIA denied the motion to reopen on June 2, 2003 on the ground that Khalil was statutorily ineligible to apply for adjustment of status because he had overstayed the January 9

---

[2] To qualify for a stay of removal, a petitioner must demonstrate (1) likelihood of success on the merits of the underlying appeal; (2) potential for irreparable harm absent the stay; (3) that the balance of interests weighs in favor of granting the stay; and (4) that the stay would not disserve the public interest. See Arevalo v. Ashcroft, 344 F.3d 1, 7 (1st Cir. 2003).

deadline for voluntary departure. See 8 U.S.C. § 1229c(d). On July 2, 2003, Khalil filed the instant petition for review of that denial.

Meanwhile, Khalil's appeal on his first petition was still pending in this court. On July 24, 2003, this court affirmed the BIA's denial of asylum and withholding of deportation and reinstated the thirty-day period of voluntary departure originally granted by the BIA, citing Yatskin v. INS, 255 F.3d 5, 11 (1st Cir. 2001). Khalil, 337 F.3d at 56. The panel was not made aware of Khalil's expired January 9, 2003 departure deadline.[3]

Mandate issued on October 23, 2003 without the respondent having petitioned for rehearing by the panel or en banc to challenge the reinstatement order.

## II.

On appeal from the BIA's denial of his motion to reopen, Khalil does not contest that if he had overstayed his period of voluntary departure, he would in fact be statutorily ineligible for adjustment of status under 8 U.S.C. § 1229c(d), and his motion to reopen would have been properly denied. Instead, he argues that he did not overstay his departure period because this court's July 24, 2003 reinstatement of the voluntary departure period retroactively

_____

[3] Khalil did not request reinstatement of voluntary departure in that appeal, and therefore the respondent had no occasion to argue that the court lacked the power to grant such reinstatement.

operated to extend his period of departure beyond January 9, 2003. Accordingly, he urges that the BIA's decision be vacated and remanded with instructions to treat him as statutorily eligible for adjustment of status or, in the alternative, to consider the effect of this court's reinstatement of voluntary departure.

As the respondent correctly points out, Khalil did not raise the possible effect of any reinstatement order from this court with the BIA in his motion to reopen. Nor did he return to the BIA once our reinstatement order was issued. As a result, he has likely waived the issue. Nonetheless, we reach the issue in order to settle the question he raises.

We reject Khalil's argument. Ordinarily, grants of equitable relief apply prospectively rather than retroactively. That is why, for example, plaintiffs must show a need for prospective relief in order to obtain an injunction. See Lopez v. Garriga, 917 F.2d 63, 67-68 (1st Cir. 1990). Khalil has not cited any authority, or even any reason, for viewing the reinstatement by a court of appeals of a limited period for voluntary departure any differently. This court's reinstatement of voluntary departure was not intended to apply retroactively. Nor should it be understood that way: Black's Law Dictionary defines "reinstate" as "to place again in a former state or position; to restore." Black's Law

Dictionary at 1290 (7th ed. 1999).  We were restarting the clock on a period that had already run.[4]

The reinstatement of the privilege of voluntary departure, which operates prospectively, gives a petitioner an opportunity, after taking his appeal, to depart at his own expense to a country of his own choosing without facing the adverse consequences of deportation.  See 8 U.S.C. § 1182(a)(9)(A) (explaining those consequences).  It does not retroactively nullify the fact that a petitioner overstayed his original period of voluntary departure.  Khalil was statutorily ineligible for adjustment of status at the time of the BIA's decision and remains so today.

The respondent raises questions about whether a reinstated period of voluntary departure begins running from the date of this court's decision or from the issuance of mandate and whether the period is stayed if the alien seeks review in the Supreme Court.[5]  We need not -- and do not -- address those questions today because, under any interpretation, it is clear that Khalil has overstayed and abused the time he was given by this court, and so has again lost the privilege of voluntary departure.

_____

[4]  We further note that adoption of Khalil's position would obviously undercut the finality of decisions by the BIA and this court.

[5]  We held in Umanzor-Alvarado that the period runs from the date that this court's mandate issues.  896 F.2d at 16.  We have not since revisited that question.

-8-

**III**.

Although this opinion could end there, we think it better to note but not decide two challenges raised by the respondent to this court's authority to reinstate voluntary departure in its decision on a petition for review. This discussion is meant simply to outline some of the relevant arguments; it should not be construed as a prediction as to how the questions raised by the respondent should be answered.

The respondent first asserts, in the broader of its two challenges, that this court lacks the authority ever to stay or reinstate voluntary departure because the respondent reads the current version of the Immigration and Nationality Act (INA) as vesting such authority solely in the INS. Fourteen years ago, under a different version of the INA, this court rejected that argument, holding that we may reinstate voluntary departure as part of our inherent equitable authority to order the appropriate remedy in a case before us. Id.

Six years later, in 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). Pub. L. No. 104-208, 110 Stat. 3009-546 (1996). The IIRIRA included a series of amendments to the INA, some of which limited the courts' review of various discretionary decisions by the Attorney General, see Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 485 (1999), but none of which expressly addressed the power of the

courts of appeals, as part of their review of petitions properly before them, to reinstate periods of voluntary departure previously granted by the BIA.

The respondent argues that the IIRIRA undermined the reasoning behind Umanzor-Alvarado and requires us to overturn that case. First, the respondent contends, Umanzor-Alvarado was motivated primarily by the concern that absent an order reinstating voluntary departure after review, aliens would be forced to choose between seeking judicial review and leaving within the time allotted for voluntary departure. That was because the pre-IIRIRA version of the INA barred courts from reviewing removal orders if the alien in question had departed the country. 8 U.S.C. § 1105a(c) (1994) (repealed). The respondent points out, however, that the IIRIRA has eliminated that provision, thus permitting an alien who has voluntarily departed or who has been deported to continue his appeal.

Second, the respondent points to 8 U.S.C. § 1229c(b)(2), which provides that "[p]ermission to depart voluntarily under this subsection shall not be valid for a period exceeding 60 days," and argues that judicial reinstatement of voluntary departure will often impermissibly extend the period beyond this statutory limit. The respondent also relies on 8 C.F.R. § 1240.26(f), which states that "[a]uthority to extend the time within which to depart voluntarily specified initially by an immigration judge or the

-10-

Board is only within the jurisdiction of the district director." That statute and that regulation, however, both describe the authority of the <u>Attorney General</u>, not that of the courts. <u>See</u> 8 U.S.C. § 1229c(b) (describing the circumstances in which "[t]he Attorney General may permit an alien voluntarily to depart the United States"); 8 C.F.R. § 1240.26 (regulation labeled as "Voluntary departure -- authority of the Executive Office for Immigration Review"). The provisions that describe the authority of the <u>courts</u> provide instead that "[j]udicial review of a final order of removal . . . is governed only by chapter 158 of Title 28." 8 U.S.C. § 1252(a)(1). In turn, chapter 158 of Title 28 provides that "[t]he filing of the petition to review does not of itself stay or suspend the operation of the order of the agency, but the court of appeals in its discretion may restrain or <u>suspend</u>, in whole or in part, the operation of the order pending the final hearing and determination of the petition." 28 U.S.C. § 2349(b) (emphasis added).

The respondent's broader challenge has been rejected by two circuits, <u>see</u> <u>Nwakanma</u> v. <u>Ashcroft</u>, 352 F.3d 325, 327 (6th Cir. 2003); <u>El Himri</u> v. <u>Ashcroft</u>, 344 F.3d 1261, 1262 (9th Cir. 2003) (adopting <u>Zazueta-Carrillo</u> v. <u>Ashcroft</u>, 322 F.3d 1166, 1175-78 (9th Cir. 2003) (Berzon, J., concurring)), and accepted by one, <u>see</u> <u>Reynoso-Lopez</u> v. <u>Ashcroft</u>, No. 02-3278 (3d Cir. May 25, 2004). Both circuits that have rejected the respondent's argument have

expressed the concern that, particularly in asylum cases, aliens who voluntarily depart may be returning to home countries where they are unsafe or, even if safe, will not be allowed to return to the United States should they be successful on judicial review. See Nwakanma, 352 F.3d at 327; Zazueta-Carrillo, 322 F.3d at 1176-77. While aliens in these situations may formally retain their right to appeal under the post-IIRIRA statute after leaving this country, their purpose in seeking an appeal is arguably thwarted. See Zazueta-Carrillo, 322 F.3d at 1177. Those two courts concluded that although court-ordered stays of voluntary departure delay departure and may impose costs on the government, such stays are necessary in some cases to ensure the right to meaningful judicial review.

Additionally, those two courts rejected the respondent's argument under 8 U.S.C. § 1229c(b)(2) and 8 C.F.R. § 1240.26(f) on the ground that a stay or reinstatement of voluntary departure did not "extend" the period for departure, but instead merely restarted the clock for the running of the departure period designated by the agency. See Nwakanma, 352 F.3d at 327; Zazueta-Carrillo, 322 F.3d at 1176.

Perhaps recognizing these concerns, the respondent offered a second, more limited challenge to the courts' authority to reinstate voluntary departure at oral argument. The respondent contends that even assuming (without conceding) that courts have

the power, either by statute or inherently, to reinstate voluntary departure when they decide a petition for review, they may do so only when the petitioner filed a motion with the court before the departure period expired to stay removal or to toll the running of the period of voluntary departure. The Ninth Circuit recently adopted this position in Garcia v. Ashcroft, No. 02-71630 (9th Cir. May 27, 2004). The respondent further argues that the fact that a petitioner has not been detained or scheduled for deportation does not excuse the alien's failure to file such a motion. This policy, the respondent argues, is necessary to ensure that the court has the opportunity to determine whether the traditional four-part test for a stay, which requires, inter alia, a showing of a substantial likelihood of success on the merits of the underlying petition, has been met. See Arevalo v. Ashcroft, 344 F.3d 1, 7 (1st Cir. 2003). If voluntary departure can be stayed or reinstated without such a showing, the respondent warns, petitioners will be encouraged to file frivolous appeals merely to extend their stays in this country. The IIRIRA, the respondent urges, eliminated provisions of the INA that automatically stayed removal upon the filing of a petition for judicial review to address precisely such concerns. See 8 U.S.C. § 1252(b)(3)(B) (a petition for review does not stay removal unless a court orders otherwise). Khalil's brief does not address any of the respondent's arguments on this issue, so we outline no arguments for a contrary conclusion.

The respondent's arguments, whatever their merits, raise concerns about notice to the bar and aliens of the respondent's present position. Since Umanzor-Alvarado, this court's practice when the agency has granted a period for voluntary departure has been to decide on a case-by-case basis whether to reinstate that departure period upon rendering our decision on the underlying petition. See, e.g., Velasquez v. Ashcroft, 342 F.3d 55, 59 (1st Cir. 2003); Disu v. Ashcroft, 338 F.3d 13, 18 (1st Cir. 2003); Quevedo v. Ashcroft, 336 F.3d 39, 45-46 (1st Cir. 2003); Yatskin, 255 F.3d at 11. The practice of the bar in this circuit, we observe, has been not to file motions with this court to toll or to stay the running of the period of voluntary departure pending judicial review. We are unaware of any rules promulgated by the INS giving notice to the bar and aliens of the position that the respondent has taken in this litigation. No doubt this court will in a later case be required to resolve these questions. We would encourage the attention of the bar and potential amici on both sides to the issue.

**IV.**

The denial of the motion to reopen is **affirmed**. Khalil, having failed to depart earlier within the time permitted by this court, has lost the privilege of voluntary departure as well as the right to petition further for adjustment of status.

-14-