**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 04-1632

MAKSIM ISUFAJ,

Petitioner,

v.

ALBERTO GONZÁLES, ATTORNEY GENERAL,[*]

Respondent.

ON PETITION FOR REVIEW OF A FINAL ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Selya, Lynch, and Lipez, <u>Circuit Judges</u>.

<u>Jack Sachs</u> on brief for petitioner.
<u>Peter D. Keisler</u>, Assistant Attorney General, <u>Papu Sandhu</u>, Senior Litigation Counsel, and <u>Isaac R. Campbell</u>, Trial Attorney, Office of Immigration Litigation, Civil Division, on brief for respondent.

June 27, 2005

[*]Alberto Gonzáles was sworn in as United States Attorney General on February 3, 2005. We have therefore substituted Attorney General Gonzáles for John Ashcroft as the respondent. See Fed. R. Civ. P. 25(d)(1); Fed. R. App. P. 43(c)(2).

**Per Curiam**.    Petitioner Maksim Isufaj, a native and citizen of Albania, petitions for review of a decision of the Board of Immigration Appeals (BIA) affirming the denial by an Immigration Judge (IJ) of his application for political asylum.

On July 6, 2001, traveling under a counterfeit Greek passport, Isufaj first set foot in the United States in the Miami airport, ostensibly as a "transit without visa" en route from Brazil to Canada, but with the real purpose of seeking political asylum in the United States, where Isufaj has relatives.  At the airport, he presented himself to immigration officers and requested asylum.

On July 11, 2001, Isufaj was given a "credible fear" interview by an asylum officer.  He stated that, after living and intermittently working in Greece for four years, he had returned to Albania for about a month to participate in the June 24, 2001 parliamentary election as a local election monitor for the opposition Democratic Party.  Shortly after the polls closed, unknown civilians, presumably associated with the ruling Socialist Party, had attempted to steal the ballot box and pointed a gun to his head when he refused to let them take it.  Later that day, his cousin warned him that he should not return home, ever, because people were looking for him and would kill him.  Fearing for his life, Isufaj explained, he fled the country.

At the conclusion of the interview, Isufaj was given a Notice to Appear for removal proceedings, and was released from detention pending such proceedings.  Those proceedings materialized on April 23, 2002, at which time Isufaj admitted the immigration charges and conceded removability.  He applied for political asylum, withholding of removal, and protection under the Convention Against Torture.[2]

On December 31, 2002, the IJ held an evidentiary hearing. Isufaj was the sole witness.  The government's cross-examination and the IJ's questions uncovered numerous inconsistencies in Isufaj's story, relating to both broad themes (such as why he came to the United States) and details (such as his United States address, when he joined the Albanian Democratic Party, and whether he had a valid Albanian passport in July 2001).  Isufaj's explanation for many of these inconsistencies was that he "must've made many mistakes on [his] statement" and the like.

The IJ concluded -- based on her assessment of Isufaj's testimony viewed against the background of documentary exhibits regarding human rights and political conditions in Albania -- that Isufaj was "not a credible witness," that he had "specifically lied

_____

[2]The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, was implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, § 2242, 112 Stat. 2681-761 (codified at 8 U.S.C. § 1231), and 8 C.F.R. § 208.16(c).

to the Immigration Officer," and that the basic premise of his story -- that he had returned to Albania to be an election monitor -- was "not credible." The IJ concluded that Isufaj was "so [economically] desperate . . . that he has lied to me, [and] to the officer when he first came to the United States. I find that the story is just simply fabricated."

The IJ denied Isufaj's applications for asylum, withholding of removal, and protection under the Convention Against Torture. She further found that Isufaj had knowingly filed a frivolous application for asylum after being warned of the consequences for doing so, namely, permanent ineligibility to enter the United States. See 8 U.S.C. § 1158(d)(6). In a brief per curiam opinion, the BIA affirmed the denial of all three forms of relief but vacated the finding that Isufaj had knowingly filed a frivolous application. On appeal, Isufaj challenges only the denial of asylum.

An asylum applicant "may qualify as a refugee either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution." 8 C.F.R. § 1208.13(b). In either case, the applicant has the burden of proof. Id. § 1208.13(a); see also Khalil v. Ashcroft, 337 F.3d 50, 55 (1st Cir. 2003) (enumerating requirements for proving past persecution or well-founded fear of persecution). "Determinations of eligibility for asylum or withholding deportation are conclusive

'if supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Albathani v. INS, 318 F.3d 365, 372 (1st Cir. 2003) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). This deferential standard means that "[t]o reverse the BIA finding we must find that the evidence not only supports that conclusion, but compels it." Elias-Zacarias, 502 U.S. at 481 n.1.

While Isufaj's story could, in theory, be consistent with the evidence, "[m]erely identifying alternative findings that could be supported by substantial evidence is insufficient to supplant the [IJ's] findings." Albathani, 318 F.3d at 372. The IJ concluded that the entire story on which Isufaj based his claim was "just simply fabricated." Nothing that we have found in the hearing transcript, or the documentary evidence concerning crime, politics, and human rights in Albania, undermines the IJ's adverse credibility finding, and therefore we cannot say that the evidence compels the conclusion that Isufaj demonstrated either past persecution or a well-founded fear of future persecution.

The petition for review is **denied.**