# United States Court of Appeals

## For the First Circuit

No. 04-1937

SAM NEANG KEO CHAN,

Petitioner,

v.

ALBERTO GONZALES,
Attorney General of the United States,

Respondent.

---

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

---

Before
Torruella, Selya, and Lynch, Circuit Judges.

---

Martin J. McNulty on brief for petitioner.
Kevin M. Laden, Attorney, United States Department of Justice, Civil Division, Office of Immigration Litigation, Peter D. Keisler, Assistant Attorney General, Civil Division, and Linda S. Wernery, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

---

July 1, 2005

---

**LYNCH, Circuit Judge**.  This case raises one new question of immigration law: does the issuance by this court of a stay of removal pending judicial review of a denial of asylum itself toll the 90-day deadline established by statute for an alien to file a motion to the BIA to reopen its prior determination?  The answer is plainly no.

In her second visit to this court,[1] Sam Neang Keo Chan ("Keo Chan") petitions for review of the denial by the Board of Immigration Appeals (BIA) of her motion to reconsider the denial of her motion to reopen her removal proceedings.  She had sought to reopen so that she could seek an adjustment of status based on an approved immediate relative visa stemming from her intervening marriage to a United States citizen.  We had earlier affirmed the BIA's denial of her claims for asylum and withholding of removal. See Chan v. Ashcroft, 93 Fed. Appx. 247 (1st Cir. 2004) (unpublished).

The BIA denied her motion to reopen and her subsequent motion to reconsider the denial on the basis that her motion to reopen was not filed within 90 days of the BIA's final administrative decision.  See 8 U.S.C. § 1229a(c)(6)(C)(i); 8 C.F.R. § 1003.2(c)(2).

_____

[1]  Alberto Gonzales was sworn in as Attorney General of the United States on February 3, 2005.  We have substituted him for John Ashcroft, previous holder of that office, as the respondent.  See Fed. R. App. P. 43(c)(2).

The petitioner concedes that her motion to reopen was not filed within that 90-day period, but counters that the period was tolled when this court (with no opposition from the government) issued a stay of removal during its consideration of her earlier asylum claim.

The BIA rejected this tolling argument, holding that this court's order of stay of removal was not intended to toll filing deadlines within the BIA itself as to motions to reopen. The BIA was entirely correct and we affirm.

## I.

Keo Chan, a native and citizen of Cambodia, entered the United States on a non-immigrant visitor visa on October 8, 1998. She remained in the United States beyond the expiration of her 30-day visa and on January 14, 1999, applied for asylum and withholding of removal. After a hearing, on October 10, 2000, an Immigration Judge (IJ) denied her application and granted her voluntary departure, but if she should fail to depart voluntarily, the IJ ordered her removal to Cambodia. The BIA affirmed the IJ's denial on March 17, 2003. Keo Chan then petitioned this court for review of the BIA's order. She sought a stay of removal, which the government did not oppose. On June 6, 2003, we issued an order saying that "deportation is stayed until the petition for judicial review is adjudicated."

While her petition for review was pending in this court, Keo Chan married a United States citizen on July 9, 2003. Her husband then filed an immediate relative visa petition on her behalf, and the petition was approved on November 24, 2003. On February 23, 2004, she filed a motion to reopen proceedings with the BIA in order to seek adjustment of status based on the approved immediate relative visa petition. On March 30, 2004, this court affirmed the BIA's and IJ's denial of her initial application for asylum, thus lifting the stay on her removal. Chan v. Ashcroft, 93 Fed. Appx. 247 (1st Cir. 2004) (unpublished).

The BIA denied Keo Chan's motion to reopen on April 12, 2004. Citing 8 C.F.R. § 1003.2(c)(2), the BIA determined that a motion to reopen the proceedings had to have been filed within 90 days after March 17, 2003, the date the final administrative order in Keo Chan's case -- the BIA's affirmance of the IJ's decision --

had been entered.[2]  The BIA thus denied Keo Chan's motion to reopen proceedings as being "filed out of time."

Keo Chan moved the BIA to reconsider, arguing that the motion to reopen was filed on time because it had been filed while this court's temporary stay of her removal pending review was still in effect.  The BIA denied the motion to reconsider on June 15, 2004, because it considered the temporary stay was limited to the execution of the removal order and did not toll the filing deadlines for other motions such as a motion to reopen.

Keo Chan then petitioned this court for review of the BIA's denial of her motion to reconsider the denial of her motion to reopen her removal proceedings.

**II.**

This petition comes to us after the effective date for the REAL ID Act of 2005, Pub. L. 109-13, which alters this court's

---

[2]  The 90-day deadline is a statutory requirement.  8 U.S.C. § 1229a(c)(6)(C)(i) ("[T]he motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal.").  The regulation in question provides that (except for limited exceptions which Keo Chan does not argue apply to her):

> [A]n alien may file only one motion to reopen removal proceedings (whether before the Board or the Immigration Judge) and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened.

8 C.F.R. § 1003.2(c)(2).

standard of review on several issues in immigration cases. These alterations do not apply to the issue presented here.

We review denials of motions to reconsider solely for abuse of discretion. Zhang v. INS, 348 F.3d 289, 293 (1st Cir. 2003). The BIA's decision "must be upheld unless it was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Ven v. Ashcroft, 386 F.3d 357, 360 (1st Cir. 2004) (internal quotation marks and citation omitted). Of course, a pure error of law by an agency constitutes an abuse of discretion. See, e.g., Radkov v. Ashcroft, 375 F.3d 96, 98 (1st Cir. 2004).

Before this court, Keo Chan's main argument is that the BIA erred as a matter of law because this court's June 6, 2003 stay of her deportation tolled "all action (including the filing deadlines as to motions) in connection with [her] removal proceedings." Keo Chan's argument implicitly concedes that but for the purported tolling effect, the 90-day period would have run from the date of entry of her final administrative order of removal: March 17, 2003. See 8 U.S.C. § 1229a(c)(6)(C)(i). The BIA, in rejecting Keo Chan's argument, said that "[t]he stay merely extended the effect of the [removal] order while the reviewing court evaluated the petition for review." The plain reading of the court's order, of course, is that it did no more than stay removal, as the BIA said. We go on to address why we reject any notion that

-6-

implicit in a stay of removal is any suspension of requirements set for filing a motion to the BIA to reopen.

The Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), a 1996 law, transformed the immigration law landscape. See generally Goncalves v. Reno, 144 F.3d 110 (1st Cir. 1998), cert. denied, 526 U.S. 1004 (1999). IIRIRA transformed motions to reopen from a regulatory to a statutory form of relief. See Azarte v. Ashcroft, 394 F.3d 1278, 1283 (9th Cir. 2005). At the same time, the 90-day limitations period, subject to exceptions not relevant here, for filing a motion to reopen became statutory. Id.; 8 U.S.C. § 1229a(c)(6)(C)(i).

There has been considerable litigation about the authority of the courts of appeals to issue two different types of place-holding orders pending review of denials of asylum (and associated relief). The first is the courts' power to issue stays of removal, which, pre-IIRIRA, had been automatically granted by statute pending the completion of judicial review. See Arevalo v. Ashcroft, 344 F.3d 1, 6 (1st Cir. 2003). This court has answered that question in Arevalo. We held, over the government's objection, that we had the power to issue stays of removal employing the traditional four-part test used for preliminary injunctive relief (as opposed to imposing a higher burden on the petitioners). Id. at 7. IIRIRA provides that service of a

-7-

petition for review of an order of removal (formerly called deportation) "does not stay the removal of an alien pending the court's decision on the petition, unless the court orders otherwise." 8 U.S.C. § 1252(b)(3)(B). Thus, Congress contemplated court orders staying the removal of the alien pending judicial review. Congress did not contemplate that such orders would implicitly affect the time limits which it had also set for filing motions to reopen before the BIA.

The second type of question was whether the courts of appeals could extend a period of voluntary departure granted initially by the agency, and, if so, whether it could do so only where a petitioner had moved for a stay in court before the voluntary deportation period had expired. See Khalil v. Ashcroft, 370 F.3d 176, 180-82 (1st Cir. 2004) (Khalil II). We noted but did not decide these issues in Khalil II.

Both Arevalo and Khalil II stressed the difference between the role played by the court in reviewing an agency determination and that played by the agency. A stay is "an order integral to a system of judicial review," and the concept of the stay is reflected in 8 U.S.C. § 1252, as well as Fed. R. App. P. 18 and 28 U.S.C. § 2349. Hor v. Gonzales, 400 F.3d 482, 484 (7th Cir. 2005). Our decision in Arevalo discussed whether Congress had intended to curb the traditional power of courts to issue stays and

concluded that nothing in IIRIRA evidenced such an intent. See Arevalo, 344 F.3d at 7-8.

The petitioner seems to suggest that our holding in Arevalo somehow expanded the power of the stays issued by the courts. Nothing in Arevalo suggests that the effect of issuing a stay of removal, which is within the court's traditional jurisdiction, had in any way affected the operation of a statutory and regulatory time frame for filing motions to reopen with the agency. Such an assumption would set up a potential conflict with Congress, a reason alone not to make the assumption. The BIA was correct not to read such an assumption into this court's order.[3]

Our holding in Khalil II is closer to the point. Khalil II considered the effect on legal requirements for filing of motions to reopen when a court had reinstated a period of voluntary departure, after affirmance of the denial of asylum. In Khalil II, the petitioner had first petitioned this court for review of the BIA's denial of asylum and withholding of removal. Khalil II, 370 F.3d at 178. The BIA had also granted Khalil a brief 30-day window of voluntary departure. Id. While his initial appeal was still pending before this court, Khalil did not voluntarily depart, but instead moved to reopen before the BIA to seek adjustment of

---

[3] Indeed, the legal separateness of the denial of the asylum claim and the motion to reopen is demonstrated by the fact that each is a separate appealable order. See 8 U.S.C. § 1252(b)(6) (providing for consolidation of review of petition for review of motion to reopen and underlying removal order).

status.  Id.  He did not move this court to stay removal or toll the running of the period for voluntary departure.  Id. at 178-79. The BIA, citing 8 U.S.C. § 1229c(d), rejected the motion to reopen on the grounds that Khalil was statutorily ineligible since he had overstayed his departure period.  Id. at 179.  A few months afterwards, this court decided Khalil's initial appeal and affirmed the BIA's denial of asylum and withholding of removal.  See Khalil v. Ashcroft, 337 F.3d 50, 56 (1st Cir. 2003) (Khalil I).  In that decision, this court also reinstated, as a matter of grace, the same brief window of voluntary departure (30 days) granted to the petitioner earlier by the BIA.  See id.

In his second petition to this court, challenging the BIA's denial of his motion to reopen, Khalil argued to us that our later reinstatement of voluntary departure had to act retroactively (which meant that he had not overstayed), and that it did so in a way which excused him from the normal rules before the BIA for eligibility for motions to reopen there.  See Khalil II, 370 F.3d at 179.  We rejected the argument, see id. at 179-80, holding that our reinstatement was only intended to apply prospectively and not retroactively.

Here, as in Khalil II, the petitioner argues that a court's temporary remedial order operates automatically to excuse the alien from meeting normal legal requirements for motions to reopen before the BIA.  Here, as in Khalil II, the argument fails.

-10-

Here, as in <u>Khalil II</u>, the alien overreaches and manipulates the system.

The main argument Keo Chan offers for her interpretation is that courts have sometimes interpreted their own remedial orders to include other related remedial orders, even if not explicitly asked for by the alien. <u>See, e.g.</u>, <u>Rife</u> v. <u>Ashcroft</u>, 374 F.3d 606, 616 (8th Cir. 2004) (interpreting a request for stay of removal pending appeal as including a request for stay of voluntary departure); <u>Desta</u> v. <u>Ashcroft</u>, 365 F.3d 741, 749 (9th Cir. 2004) (same). But there is a distinct difference between a court's desire to cover all the bases in maintaining its ability to give effective relief and a court order being read to implicitly interfere with an agency's running of its own affairs.[4]

We note one factor, which is that the BIA is not insensitive to the problem of aliens who wish to be married pending adjudication of their visa petitions. The BIA denied Keo Chan's asylum claim on March 17, 2003. Her motion to reopen was due on June 16, 2003. She did not file one. She was married about three weeks later, on July 9, 2003. It is reasonable to think that by the June 16 deadline she knew that she was getting married, but she nonetheless married after the deadline. She did not move to reopen

[4] We do not reach the hypothetical of whether a court could explicitly set aside an agency filing deadline if necessary to provide complete relief or to preserve its jurisdiction. This case does not present that question.

-11-

until February 23, 2004, more than six months later.  Even if she did not have an approved relative visa until November 24, 2003, she does not claim she would have been precluded from seeking to reopen based on an earlier wedding date and a pending visa petition. Indeed, the BIA has specifically held that notwithstanding an unadjudicated visa petition filed on an alien's behalf, a motion to reopen proceedings based on a marriage entered into by the alien after commencement of removal proceedings may still be granted. See In re Velarde-Pacheco, 23 I. & N. Dec. 253, 256 (BIA 2002). This policy was motivated by IIRIRA's short 90-day deadline, the long wait time for visa approvals, and the concern that otherwise eligible aliens may thus be deprived of the chance to adjust status.  See id. at 255.  Keo Chan did not take advantage of this policy.

## III.

The BIA's decision is **affirmed**.